**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 22 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN HADLEY FISHER,

      Petitioner - Appellant,

v.

GARY GIBSON, Warden; DREW
EDMONDSON, Attorney General of
the State of Oklahoma,

      Respondents - Appellees.

Nos. 99-6457, 99-7107 &
00-7114

---

**APPEALS FROM THE UNITED STATES DISTRICT COURTS**
**FOR THE WESTERN AND EASTERN DISTRICTS OF OKLAHOMA**
**(D.C. Nos. CIV-98-965-T, CIV-98-593-BU, CIV-99-132-BU)**

---

John K. Bounds, Hugo, Oklahoma, for appellant.

Kellye Bates, Assistant Attorney General, (W.A. Drew Edmondson, Oklahoma
Attorney General, with her on the briefs), Oklahoma City, Oklahoma, for appellees.

---

Before **SEYMOUR**, **PORFILIO**, Circuit Judges, and **OWEN**, District Judge.[*]

---

**OWEN**, District Judge.

---

    [*] The Honorable Richard Owen, United States District Judge, United States
District Court for the Southern District of New York, sitting by designation.

John Hadley Fisher, Petitioner-Appellant, currently serving life sentences without parole at the Oklahoma State Penitentiary, appeals the denial of federal habeas relief, *see* 28 U.S.C. § 2254, from convictions on unappealed guilty pleas in 1992 and 1994 in three separate Oklahoma State proceedings in Oklahoma County, Seminole County and Sequoyah County, which were the subject of three different federal habeas petitions and three separate appeals to this Court now consolidated for review. We affirm.

The principal issue on these consolidated appeals is whether each of the federal district courts that heard Fisher's habeas petitions alleging incompetence at the time of each of his three state court pleas should have granted a hearing on that subject and, subsequently, applied equitable tolling to the one year limitation period for filing of federal habeas relief which had expired in each case. *See* 28 U.S.C. § 2244(d).

Fisher, a highly troubled and occasionally violent youth and teenager, on September 20, 1991, at age nineteen, was charged with murder and conspiracy in Seminole County and faced the death penalty. He retained counsel. The next day, September 21, 1991, in Oklahoma County, a multi-count felony information involving different events charged Fisher and four others with conspiracy, burglary, kidnapping for purpose of extortion and robbery. The court appointed Fisher counsel. A month later, in Oklahoma County, Fisher's counsel expressed

concern as to his client's competence and, on October 21, 1991, Oklahoma County District Judge Carolyn R. Ricks stayed the proceeding pending a psychological examination.[1]

On November 18, 1991, Judge Ricks held a hearing which included evidence from forensic psychologist Dr. Kelly Shannon that Fisher was of "average intelligence" with a high school diploma, but his "[a]ffect was depressed and apathetic." Shannon concluded, "As Mr. Fisher appears to have a psychotic underpinning producing grandiose, delusional beliefs, it is felt he can not assist with counsel at this time. It is recommended he be remanded to Eastern State Hospital for restoration of competency." Judge Ricks found Fisher "incompetent" on November 18, 1991, committed him to Eastern State Hospital in Vinita, Oklahoma, and suspended further proceedings in Oklahoma County until Fisher's competency could be restored.

In Seminole County, three days later, November 21, 1991, Fisher's counsel, based on the proceeding in Oklahoma County, expressed similar doubts to the trial court about Fisher's competence. The Seminole Court thereupon undertook to hold its own competency hearing, notwithstanding Fisher's counsel contended that Seminole County was bound by Oklahoma County's determination that

---

[1] *See* OKLA. STAT. tit. 22, § 1175.2(c) ("Any criminal proceedings against a person whose competency is in question shall be suspended pending the determination of the competency of the person.").

Fisher's competency was in question. Before this could be resolved, however, on January 31, 1992, the Oklahoma Court of Criminal Appeals intervened entering an "Order Granting Writ of Prohibition," which prohibited the Seminole County Court from conducting a competency hearing, and stating that all criminal procedures were stayed until Fisher "achieves competency."

On February 25, 1992, Eastern State Hospital, in an extensive report of Dr. Jeanne Russell, the hospital's Director of Forensic Programs, concluded that Fisher, age nineteen with an above average IQ, understood that "he was charged with serious felony offenses," was facing the death penalty, understood the basic roles of judge and jury, the plea options available and potential defenses to the charges against him and, specifically, "In evaluating competency functions, Mr. Fisher appears to have a factual understanding of the charges, as well as an ability to communicate and cooperate with defense counsel." Accordingly, Fisher was discharged from the hospital and returned to Oklahoma County for further proceedings. While there, he twice attempted suicide.

In addition to the foregoing hospitalization, study and discharge as competent, on May 18 and 19, 1992, Judge Ricks, on Fisher's application, conducted a competency trial with a jury. The trial court's charge, in accordance with Oklahoma law at that time, put the burden on Fisher to prove his

incompetence by clear and convincing evidence.[2]  In answer to the specific

question: *Is the petitioner incompetent to undergo further criminal proceedings at

this time?,* the jury answered, *no*.  The jury, as Judge Ricks' order relates, having

found Fisher "competent," or, we note, more precisely, that he had not proven

incompetence by clear and convincing evidence, criminal proceedings were

resumed in Oklahoma County on May 19, 1992.

Sometime in the next weeks, Fisher was transferred to Seminole County

where that proceeding also resumed, but on or about August 19, 1992, Fisher

escaped from the Seminole County jail.  He was, however, shortly recaptured in

Sequoyah County, and on August 22, was charged with two others in a Sequoyah

County indictment with an attack on state troopers while trying to run a Sequoyah

roadblock, and was appointed counsel.

Four days later, August 26, back in Seminole County, his counsel filed an

additional "Application for Determination of Competency," in which counsel

stated that he was "[u]nable to conduct even the semblance of rational

conversation with [Fisher]."  In response, that same day, the Seminole court

stayed its proceedings and set a hearing to commence two days later on August

28, 1992.  However, the hearing was not held and on August 31, 1992, Fisher

---

[2] We address the later-determined error of this more specifically hereafter.  *See*
*Cooper v. Oklahoma*, 517 U.S. 348, 350, 369, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

pleaded guilty in the Seminole proceeding. There, the trial court in an "Order

Denying Post-Conviction Relief," stated:

> There is no record of a hearing or disposition of the
> application on August 28, however, on August 31, 1992 the
> defendant with counsel, together with the District Attorney
> presented themselves before the Court for purpose of entering
> a negotiated plea on the 1st Degree murder charge and a blind
> plea to the conspiracy charge. During the course of that plea
> the court observed the defendant, made inquiry of defendant's
> counsel concerning their request for a competency
> determination, reviewed the defendant's statement of facts in
> support of the plea of guilty, and based upon all of the
> observations, inquiry, and representation of counsel
> determined the defendant competent to enter his plea of guilty
> to the charge. The only allegations presented in the course of
> this case raising a question of defendant's competence were
> the allegations contained in the defendant's application for a
> determination of competency.

Fisher was sentenced to life imprisonment without the possibility of parole. He

took no direct appeal and has at no time sought to withdraw his plea.

Nothing further transpired in the Oklahoma and Sequoyah County cases

until the Sequoyah case was set for trial on January 20, 1994. There, Fisher's

counsel, nine days before trial, moved for a psychological evaluation, expressing

concern about his client's ability to assist in his defense and obtained a

postponement. Then on January 21, 1994, the day after the Sequoyah trial was to

begin, Fisher, in Oklahoma County, with counsel present (and, we note, *not*

having moved for a psychological evaluation), pleaded guilty. The trial court's

"Plea of Guilty, Summary of Facts" sheet, an extensively detailed questionnaire of

the defendant *and* his lawyer requiring the defendant to initial twenty-nine inquiries and the lawyer to initial three others (including two specific questions about competency), indicates Fisher and his counsel answered "No" to the final question: "Do you or your lawyer have anything more to say or do you know of any legal reason why you should not be sentenced now?" On the basis of the foregoing, the trial court, the prosecutor and the defense attorney subscribed to the summary statement in the form:

> The Defendant is mentally competent to understand the nature, purpose and consequences of this proceeding, and further, Defendant was mentally competent to appreciate and understand the acts he . . . committed on or about the date alleged in the Information, and to realize the nature, purpose and consequences of those acts at the time they were committed.

Under a plea agreement, Fisher essentially received a life sentence to be served concurrently with the life sentence without parole he was by then already serving from his previous Seminole plea in 1992. Here, too, Fisher took no direct appeal, did not seek to withdraw his plea or file for any post-conviction relief.

Then, sixteen days later, on February 7, 1994, Fisher, with counsel, pleaded guilty in the Sequoyah case arising from the attack on state troopers. The Sequoyah court's allocution minutes summarily recite:

> The Defendant is mentally competent to appreciate and understand the acts he committed on or about the date alleged in the information and to realize the nature, purpose and consequences of these acts at the time they were committed.

-7-

> The Court further finds the plea entered herein has been knowingly and voluntarily entered with full knowledge of those Constitutional rights as explained.

Fisher was there sentenced to four consecutive sentences totaling fifty years which were ordered to run concurrently with his Seminole County life sentence. Here again, Fisher took no direct appeal and never sought to withdraw his plea.

During the next three-and-one-half years, while Fisher was serving his sentences, the United States Supreme Court, on April 16, 1996, reversed an Oklahoma death penalty conviction, *see Cooper*, *supra* n.2, declaring that the imposition of the burden of proof on a defendant to prove incompetence by clear and convincing evidence offended due process, necessarily impacting the legal effect of Judge Ricks' trial outcome in Oklahoma County, but not, as we observe hereafter, the resolution of this consolidated appeal.

Coming to July 17, 1997, Fisher's mother retained attorney John K. Bounds, who thereafter has served as Fisher's counsel both below and on these appeals. Shortly, there were motions for post-conviction relief in Sequoyah County on August 13, 1997 and in Seminole County on October 16, 1997.[3] The Sequoyah court denied Fisher's motion on November 21, 1997, rejecting the argument that Fisher pleaded guilty while incompetent based on its reading of the

---

[3] The Oklahoma County conviction was not attacked until a year later in federal court as discussed hereafter.

record which included the court's inquiry of Fisher and his lawyer regarding Petitioner's competence at the time of the plea. This was affirmed by the Oklahoma Court of Criminal Appeals on February 13, 1998. Next, on April 9, 1998, the Seminole court denied Fisher's application there for post-conviction relief, similarly rejecting the notion that Fisher pleaded guilty while incompetent based on its findings that the trial court observed Petitioner's demeanor and inquired of Fisher and his counsel regarding his competence. Further, the Seminole court held that Fisher had constructively withdrawn his application for a determination of competency by entering his guilty plea. The Oklahoma Court of Criminal Appeals affirmed this denial on June 29, 1998.

Thereafter, on July 15, 1998, Fisher filed a federal habeas petition in the United States District Court for the Western District of Oklahoma claiming that as to the Oklahoma County plea, he was incompetent when he pleaded guilty. The State of Oklahoma moved to dismiss Fisher's petition as time-barred.[4] The assigned Magistrate eventually filed a Supplemental Report and Recommendation stating that Fisher's July 1998 petition should be dismissed as untimely under the one-year limitation period contained in 28 U.S.C. § 2244, enacted under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

---

[4] The Magistrate to whom the case was referred at first recommended that Fisher's petition be dismissed for failure to exhaust state remedies in the District Court of Oklahoma.

104-132, 110 Stat. 124, which one-year period, as observed hereafter, had expired on April 24, 1997. On November 22, 1999, the District Court (Ralph G. Thompson, *Judge*) adopted this recommendation, dismissed the petition and denied Fisher a certificate of appealability.

In the meantime, on December 21, 1998, Fisher filed a second federal habeas petition in the United States District Court for the Eastern District of Oklahoma (Michael Burrage, *Judge*), and an amended petition on January 11, 1999, asserting among other grounds for relief from his Sequoyah conviction that the trial court, Fisher having raised a question as to his competency, failed to hold a hearing and that his appointed counsel failed to investigate his mental health history or pursue certain psychiatric defenses. The State of Oklahoma moved to dismiss the petition as untimely under the said one-year limitations period imposed by AEDPA. It was in this 1999 federal habeas proceeding that Fisher first advanced the theory that because Oklahoma County Judge Ricks found him incompetent in 1991, and while he was subsequently found "competent" in 1992 by a jury, it was under a later-determined unconstitutional standard, *see Cooper*, *supra* n.2, and, that being so, Judge Ricks' previous 1991 finding of incompetence controlled because no constitutionally proper competency

proceeding has ever been held.[5]  As a result, Fisher contended, his petition was

not time-barred because the limitations period was equitably tolled.  Fisher argued

that his limitations period commenced when his mother retained Bounds as

counsel in July 1997.  The District Court denied the petition, ruling that AEDPA's

one-year limitations period should not be tolled because each of Fisher's claims

regarding his competence were discoverable at the time of each of his three guilty

pleas.  The District Court denied a certificate of appealability, concluding that

Petitioner failed to make "a substantial showing of the denial of a constitutional

right" as required by 28 U.S.C. § 2253(c)(2).

Next, on March 24, 1999, Fisher filed a third federal habeas petition in the

United States District Court for the Eastern District of Oklahoma (Michael

Burrage, *Judge*) seeking relief from his Seminole County murder and conspiracy

convictions.  Here, too, he asserted that the state trial court's failure to hold a

hearing before accepting his guilty plea violated the due process clause and,

again, that he had pleaded guilty while incompetent, and as to this issue, sought

an evidentiary hearing on his habeas claim.  Judge Burrage denied both Fisher's

motion for a hearing and his petition, again noting that Petitioner had not

---

[5] It was not argued or addressed by counsel, as we later discuss in more detail, that after Judge Ricks found Fisher incompetent and committed him to Eastern State Hospital, he was within two months discharged as competent in a lengthy report by the hospital and, more importantly, that Judge Ricks lifted the stay, *see* OKLA. STAT. tit. 22, § 1175.2(c), and continued the criminal case on that finding.

developed facts warranting equitable tolling of AEDPA's one-year statute of limitations which, as elsewhere observed, had run almost two years earlier on April 24, 1997. The District Court denied a certificate of appealability.

On Petitioner's motions, this Court granted certificates of appealability in all three matters in June 2000 and February 2001. Our jurisdiction arises under 28 U.S.C. § 2253. We review the factual findings of the district courts for clear error and their legal bases for dismissal of Fisher's petitions *de novo*. *See Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).

Fisher raises essentially three points in these consolidated appeals: the federal district courts erred in (1) failing to hold evidentiary hearings regarding Petitioner's competence at the time he pleaded guilty in the state courts, (2) dismissing his federal petitions as untimely because he was entitled to equitable tolling for his incompetence, and, alternatively, (3) even if this Court should affirm the findings of untimeliness, AEDPA's one-year limitation on the filing of a federal habeas petition violates, under these circumstances, the Suspension Clause, U.S. CONST. art. I, § 9, cl. 2 ("The privilege of the writ of habeas corpus shall not be suspended . . . .").

Fisher's petitions, filed in 1998 and 1999, are governed by the provisions of AEDPA, including "[a] 1 year period of limitation" in an "[a]pplication for a writ of habeas corpus by person in custody pursuant to the judgment of state

court." 28 U.S.C. § 2244(d)(1). The limitations period generally runs from the date on which the state judgment became final after direct appeal, *see* 28 U.S.C. § 2244(d)(1)(a), but is tolled during the time state post-conviction review is pending, *see* 28 U.S.C. § 2244(d)(2).

Each of Fisher's three convictions was not, however, appealed and therefore became final ten days after entry of Judgment and Sentence, *see* OKLA. STAT. tit. 22, § 1051; Rule 4.2, *Rules of the Court of Criminal Appeals*, OKLA. STAT. tit. 22, Ch. 18, App., all of which occurred more than two years before AEDPA's effective date. Where a conviction became final before AEDPA took effect, as is the case with Fisher, the one year limitation period for a federal habeas petition starts on AEDPA's effective date, April 24, 1996. *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000); *Hoggro v. Boone*, 150 F.3d 1223, 1225-26 (10th Cir. 1996). Thus, in order to be timely, Fisher should have filed all of his habeas petitions prior to April 24, 1997. *See United States v. Simmonds*, 111 F.3d 737, 746 (10th Cir. 1997). Fisher's petitions cannot be tolled for time spent in state post-conviction proceedings because his applications for post-conviction relief were not filed until after April 24, 1997, the end of the limitations period for convictions, like Fisher's, which became final before the effective date of AEDPA.

Given the foregoing, Fisher's petitions can only be deemed timely if

equitable tolling were, for some reason, to be applied, that is, a judicially-crafted stopping of the clock. "AEDPA's one-year statute of limitations is subject to equitable tolling but only in 'rare and exceptional circumstances.'" *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (internal citation omitted); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (holding equitable tolling appropriate only where failure to timely file caused by "extraordinary circumstances"), *cert. denied*, 121 S.Ct. 1195 (2001); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840 (2000); *Calderon v. United States Dist. Court for Cent. Dist. of Cal. (Kelly)*, 163 F.3d 530, 535 (9th Cir. 1998) (en banc); *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). "The one-year time period begins to run in accordance with individual circumstances that could reasonably affect the availability of the remedy, but requires inmates to diligently pursue claims." *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).

Fisher's present counsel, Mr. Bounds, argues that the limitation period should be tolled because Fisher was, and always has been, incompetent and therefore unable to seek relief until Bounds was retained by Fisher's mother, at which time, for the first time, someone of competence stepped in to recognize and

deal with the myriad legal issues.  Thus while almost three months after this Circuit's April 24, 1997 AEDPA one-year grace period for convictions which became final before the law's enactment had expired, over three years after his convictions became final in the Oklahoma County and Sequoyah County proceedings and almost five years since his conviction became final in Seminole County, Bounds asserts that the proper chronological starting point for the one year within which Fisher's habeas petition would be timely is July 17, 1997, the date he was retained by Fisher's mother, for this is the date, "[o]n which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).  For § 2244(d)(1)(D) to be applicable, the federal district courts below would have had to have equitably tolled the period from the date on which Fisher's convictions became final to July 1997, the date, as observed, Bounds was retained.

Fisher's keystone contention above, that the state trial courts erred by failing to conduct an evidentiary hearing prior to accepting each of his three guilty pleas, requires us to address what this multi-faceted record reveals as to Fisher's competence in the three separate Oklahoma proceedings, as determined by the reviewing federal district judges below.

Normally, a defendant concedes criminal liability as to each element of the charged crime by entering a plea of guilty, *see United States v. Kelsey*, 15 F.3d

152, 153 (10th Cir. 1994); *see also McCarthy v. United States*, 394 U.S. 459, 466,

89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *United States v. Broce*, 488 U.S. 563, 570,

109 S.Ct. 757, 102 L.Ed.2d 927 (1989), and, *sub silentio*, that he is legally

competent, because competency is a necessary prerequisite to a valid plea.  A

defendant, moreover, generally waives all objections of a constitutional nature

when he voluntarily and knowingly enters a plea of guilty, *see Tollett v.*

*Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), because

> [a] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process.   When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the
> offense with which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of constitutional rights
> that occurred prior to the entry of the guilty plea.

*Id.* at 267.

A lawyer for a defendant, charged with ethical obligations, is also to be

relied on in some measure in assessing the validity of a plea for "[d]efense

counsel is often in the best position to determine whether a defendant's

competency is questionable." *Walker v. Gibson*, 228 F.3d 1217, 1228 (10th Cir.

2000) (internal citations omitted), *cert. denied*, 121 S.Ct. 2560 (2001).  In

Fisher's three plea proceedings, each lawyer represented to each judge at the time

of the plea that Fisher was competent.[6]  In each case as well, the state trial judges

---

[6] For example, in Oklahoma County, Fisher's counsel initialed a sheet entitled
"Plea of Guilty, Summary of Facts."  The sheet indicates that counsel was asked if he had

made their own observations of Fisher's competence to enter his pleas of guilty, although obviously based on less input and less close association than counsel.

On the record before us, therefore, Petitioner has given us (and the federal district judges reviewing his claims) no basis to disregard these consistent indicia of competency. Fisher argues that because his Oklahoma County competency trial saddled him with a later-determined unconstitutional burden of establishing competency, no court to date has ever held a constitutionally compliant competency proceeding. We do note, however, that the jury determination of competence did immediately follow Fisher's discharge from Eastern State Hospital after the hospital's doctors made findings and released him to the state trial court as competent. Further, just because that proceeding with a finding of competence suffered from constitutional infirmity does not mean that all subsequent proceedings thereafter were tainted or rendered unreliable as to the conclusions to be drawn from them as to Fisher's competence at their relevant times. Petitioner does not reference any constitutional infirmity in the three later plea proceedings themselves and only recites his constitutional right not to be convicted while incompetent. The only argument Fisher's counsel advances as to why the findings of competence by the trial judges and the representations of

reason to believe that Fisher was incompetent at the time of the plea or when he committed the crimes detailed in the information to which he was pleading guilty. Counsel answered "no" to both inquiries.

-17-

defense counsel at the plea proceedings were insufficient is that plea proceedings are somehow different, that is, they are too short and simple to make important determinations about legally significant issues such as mental competence. This argument is unpersuasive. Shorter though they may be, were we to accept this position, trial judges would be required to hold mini-trials, should the issue of competency be raised, before accepting any guilty plea. We do not regard this as a necessary safeguard to ensure that a defendant is legally competent.

Nor do the three records support a claim that the judges and defense lawyers in each of Fisher's cases failed to address or fairly assess his competency at the time of the crimes or the plea, or otherwise failed in their respective obligations of ensuring that each of Fisher's pleas was voluntarily, knowingly and intelligently made. In sum, Petitioner has failed to present extraordinary circumstances warranting equitable tolling. His mere allegations of incompetency at the time of his 1992 and 1994 pleas, all of which significantly pre-date this Circuit's April 24, 1997 grace period for pre-AEDPA convictions, do not suffice.[7]

---

[7] We note that a panel of this Court reached the same conclusion regarding similar issues in an unpublished Order and Judgment. *See Jackson v. Hargett*, No. 98-6419, 1999 WL 527720, at *2 (10th Cir. July 23, 1999) (holding that "[a]n allegation of incompetency at the time of [Petitioner's] state court conviction, almost eleven years prior to filing his federal habeas petition, does not suffice . . ." to warrant equitable tolling). Jackson is not binding precedent and we do not rely on it in reaching our decision in the present appeal. *See* 10th Cir. R. 36.3. We cite that Order and Judgment simply to acknowledge that the issues recur.

The federal district courts' decisions relying on these findings and declining to equitably toll Fisher's petitions were therefore appropriate. Similarly, the Eastern and Western District Courts' decisions dismissing Fisher's habeas petitions also examined the records and concluded that there was no evidence of incompetence at the time of the crimes or the pleas and, on that basis, declined to hold evidentiary hearings on those issues. Since 28 U.S.C. § 2244 does not require a hearing on the issue of time-bar or equitable tolling, an evidentiary hearing would be a matter of discretion. Accordingly, we conclude that the three district courts did not abuse their discretion by denying Petitioner's requests for evidentiary hearings.

Finally, Fisher contends that AEDPA's one-year limitation on the filing of a federal habeas petition, under these circumstances, violates the Suspension Clause. We addressed this issue in *Miller*, 141 F.3d at 976-978, where we noted that "[w]hether the one-year limitation period violates the Suspension Clause depends upon whether the limitation period renders the habeas remedy 'inadequate or ineffective' to test the legality of detention." *Id.* at 977 (quoting *Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 1229-30, 51 L.Ed.2d 411 (1977)). Fisher bears the burden of demonstrating inadequacy and ineffectiveness. *See id.* Although there may be circumstances which render the habeas remedy inadequate and ineffective, on the basis of the extensive recitals

above, we are satisfied that such circumstances are not present here.

Finally, we observe that Fisher does not contend his claimed due process violations have resulted in the erroneous conviction of an innocent man.  *See Miller*, 141 F.3d at 978 (citing *Schlup v. Delo*, 513 U.S. 298, 323-329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

On the records presented to the district courts, we conclude that the circumstances set forth in Fisher's petitions in no way reach the required extraordinariness as to warrant equitable tolling, and we therefore hold that none of the district courts below erred in declining to hold evidentiary hearings and dismissing Fisher's petitions as untimely.  Accordingly, the judgments of each of the three district courts on this consolidated appeal is AFFIRMED.