**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 14, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STEVEN O. TITSWORTH,

      Petitioner - Appellant,

v.

MIKE MULLIN, Warden,

      Respondent - Appellee.

No. 10-7034
(E.D. Okla.)
(D.C. No. 6:09-CV-00401-RAW-KEW)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

Steven O. Titsworth, proceeding pro se[1] and *in forma pauperis*, seeks to appeal

from the district court's dismissal of his 28 U.S.C. § 2241 petition, concluding it was

untimely.[2]  The determinative issue is when the statute of limitations began to run.  We

deny his request for a certificate of appealability (COA).

---

[1] We liberally construe Titsworth's pro se filings.  *See Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[2] Titsworth's petition was initially styled as a petition pursuant to 28 U.S.C. § 2254.  However, because it challenged the execution of his sentence, *i.e.*, his ineligibility for enhanced credits to his sentence, rather than its validity, the district court recharacterized the petition as a 28 U.S.C. § 2241 petition.  *See Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006).  Titsworth did not object.

# I. FACTUAL BACKGROUND

Between 1984 and 1993, Titsworth pled guilty in Oklahoma state court (Muskogee County) to Robbery With a Firearm (Case No. 84-51), Unauthorized Use of a Motor Vehicle (Case No. 93-757), Knowingly Concealing Stolen Property (Case No. 93-978), and Attempted Grand Larceny (Case No. 93-1017). In each case, the court suspended all or part of his sentence. On February 1, 2000, Titsworth filed an application for post-conviction relief in each case. Relying on *Bumpus v. State*, he sought to vacate his suspended sentences and withdraw his guilty pleas. 925 P.2d 1208 (Okla. Crim. App. 1996).[3] The State did not object. On March 31, 2000, State Court Judge Mike Norman entered an order stating:

> [Post-Conviction Relief] All cases—Motion to Set aside plea granted. Defendant pleads not guilty, bond $20,000 each case. First of the four cases will be set for trial on 6-5 jury docket. 93-1017 & 84-51 REV both cases set 4-14-00 @ 9:00. Appoint MIDS.

(R. Vol. I at 118.)

While Judge Norman's March 31, 2000 order is captioned with all four case numbers (84-51, 93-757, 93-978, 93-1017), Titsworth had already served the sentences in 84-51 and 93-757. Therefore, the State only re-prosecuted him in 93-978 and 93-1017.

---

[3] Bumpus pled guilty and was sentenced to a suspended sentence. *Bumpus*, 925 P.2d at 1209-10. It was later learned that he was ineligible for a suspended sentence at the time of sentencing because he had two or more previous felony convictions. *Id.* Therefore, the Oklahoma Court of Criminal Appeals vacated Bumpus' suspended sentence and remanded the case to the trial court to allow Bumpus the opportunity to either withdraw his guilty plea, whereby his conviction would be set aside and the State could retry him, or affirm his guilty plea, whereby his sentence would be amended to strike the suspended sentence. *Id.* at 1212. Titsworth, like Bumpus, was ineligible for a suspended sentence because he had two prior felony convictions.

Nevertheless, on April 6, 2000, he filed a motion to dismiss all four cases alleging double jeopardy, prejudicial delay and vindictive prosecution. On April 23, 2001, State Court Judge Thomas Alford denied the motion, concluding the double jeopardy and vindictive prosecution claims were without merit and any time delay was due to Titsworth's decision to withdraw his guilty pleas. On May 23, 2001, Titsworth reentered a guilty plea to Attempted Grand Larceny in 93-1017 and pled guilty to Larceny of Merchandise From a Retailer in 93-978; he was sentenced to time served in both cases.

Three years later, Titsworth was found guilty by a jury in state court of Possession of a Controlled Substance (Count 1) and Larceny of Merchandise from a Retailer (Count 2) (Case No. 04-157). He was eventually sentenced to 17 years imprisonment on Count 1 and one year imprisonment on Count 2 and placed in the custody of the Oklahoma Department of Corrections (ODOC). He began serving the sentences on March 3, 2005. The next day, a prison official completed an "Eligibility for Enhanced Level 3 and 4 Credits" form and concluded Titsworth was not entitled to enhanced credits to his sentence because of his prior conviction for Robbery With a Firearm in 84-51.[4] The form indicates a copy was sent to Titsworth but he denies having received it. But, inmates are also provided monthly time sheets. In July 2005, Titsworth was promoted to Level 3 and

---

[4] In Oklahoma, inmates may be awarded earned credits; the number of earned credits depends on the class level assigned to the inmate. Okla. Stat. Ann. tit. 57 § 138(A). Inmates assigned to Class Level 1 are entitled to none; those assigned to Class Levels 2, 3 or 4 are entitled to 22, 33 or 44 credits per month, respectively. *Id.* § 138(D)(2)(a). Certain inmates assigned to Class Level 3 or 4 may be eligible to earn more credits, called enhanced credits, if they do not have a previous violent felony conviction. *Id.* § 138(D)(2)(c),(E). These inmates are entitled to 45 or 60 credits per month, respectively. *Id.* § 138(D)(2)(c).

received a monthly time sheet from the ODOC showing he earned 33 credits. Had he been eligible for enhanced credits, he would have received 45. *See supra* n.4. In December 2005, he was promoted to Level 4 and received 45 earned credits. Had he been eligible for enhanced credits, he would have received 60. *Id.*; Okla. Stat. Ann. tit. 57 § 138(D)(2)(a), (c).

On February 15, 2006, Titsworth claims a fellow inmate informed him of the ODOC's enhanced credit policy. He says he then asked his case manager, Marilyn Brown, why he was not receiving enhanced credits. She told him he was not eligible due to his conviction in 84-51. When he told her the conviction had been set aside on March 31, 2000, she agreed to look into the matter.

On April 30, 2006, Brown advised Titsworth to obtain a copy of the order showing his conviction in 84-51 had been set aside. Several days later, Titsworth wrote to the state court seeking a copy of the order. In June 2006, he received a copy of Judge Norman's March 31, 2000 order and Judge Alford's April 23, 2001 order, which he gave to Brown who forwarded them to the ODOC's records department. He alleges he waited over a year but never received a response from the ODOC; Brown, therefore, advised him to file a "Request to Staff."

On June 25, 2007, Titsworth filed his first "Request to Staff" arguing he was unlawfully being denied enhanced credits because of his conviction in 84-51.[5] He

---

[5] In his appeals to the ODOC and the courts, Titsworth often stated he was improperly being denied enhanced credits due to his convictions in 84-51 and 93-757 which had been set aside. However, his conviction in 93-757 for Unauthorized Use of a Motor Vehicle was not used by the ODOC as a basis for denying him enhanced credits

claimed that conviction could not be used to deny him enhanced credits as his guilty plea had been set aside by Judge Norman's March 31, 2000 order. The next day, prison staff member Pam Carter denied relief saying:

> Mr. Titsworth, you were sentenced [i]n 84-51 . . . on 06-01-84. You were incarcerated from 6[-]21-84 thru 5-26-86 on [84-51]. The document provided does not show that this case was set aside on 3-31-00.

(R. Vol. I at 16.)

On January 16, 2008, Titsworth wrote the ODOC's sentencing administrator, again arguing he was improperly being denied enhanced credits based on a vacated conviction. Two days later, the administrator responded: "Mr. Titsworth, you have been responded to by Ms. Carter." (R. Vol. I at 19.) On January 22, 2008, Titsworth wrote Judge Norman requesting that copies of the order setting aside his guilty plea in 84-51 be sent to the ODOC's records department. A week later, Judge Norman responded, saying:

> I find no case CF 84-51 in Muskogee County. There is a CF-83-551, which was a revocation before Judge Edmonson. I can find no case in Muskogee County in which I granted you post conviction relief and ordered the guilty plea set aside. If you have such orders, please forward to my attention.

(R. Vol. I at 20.) Titsworth claims he sent the requested documentation to Judge Norman but never heard a response, even after several requests. **[Vol. I at 19-20, 106]**

On July 10, 2008, upon being advised to do so by his case manager, Titsworth presented another "Request to Staff" to his unit manager. He again argued his conviction in 84-51 had been vacated and could not be used to deny him enhanced credits. The unit manager

---

because it is not a qualifying conviction under Okla. Stat. Ann. tit. 57 § 138(E). Therefore, we will not address that conviction and will refer only to his conviction in 84-51.

responded five days later questioning why Titsworth had sent him a "Request to Staff" but stated he would have Titsworth's case manager investigate the issue.

On August 5, 2008, Titsworth filed a pro se "Petition for Issuance of a Writ of Mandamus" with the Oklahoma Court of Criminal Appeals (OCCA) in which he claimed he was being unlawfully denied enhanced credits based on his conviction in 84-51. The OCCA denied the petition on September 23, 2008, concluding, *inter alia*, Titsworth was not entitled to mandamus relief because he had not shown relief other than mandamus was inadequate. In a footnote, the OCCA noted that Judge Norman's March 31, 2000 order and Judge Alford's April 23, 2001 order indicated Titsworth was granted post-conviction relief in 84-51 but neither document revealed 84-51's final disposition.

On October 1, 2008, Titsworth, seeking a final disposition in 84-51, filed a motion to dismiss in that case. On December 31, 2008, Judge Alford issued an order denying the motion as moot. In doing so, he stated nothing was pending in 84-51 and Judge Norman's March 31, 2000 order had no effect on it because the sentence Titsworth received in that case had already been discharged at the time of the order.

On February 13, 2009, Titsworth filed yet another "Request to Staff" referring to Judge Alford's December 31, 2008 order. Again, he argued his conviction in 84-51 could not be used to deny him enhanced credits because it had been vacated and set aside by Judge Norman's March 31, 2000 order. The ODOC responded: "The order filed 12-31-08 signed by Judge Alford on 12-30-08 says that your motion is moot. This order does not do anything. This order does not show this to be vacated. Please read the entire order. Request denied." (R. Vol. I at 22.) Over the next several months, Titsworth filed

- 6 -

various pleadings with the ODOC reiterating the same theme, *i.e.*, that his conviction in 84-51 was improperly being used to deny him enhanced credits. The ODOC denied relief.

On July 1, 2009, Titsworth filed another petition for writ of mandamus with the OCCA asking that it direct the ODOC to grant him enhanced credits toward his sentence in 04-157 because the conviction being used to deny the credits had been vacated and set aside. On August 28, 2009, the OCCA denied relief, saying the trial court orders and other documentation attached to Titsworth's petition did not establish his conviction had been vacated and set aside:

> The post-conviction orders indicate [Titsworth's] plea[] in [84-51] can be set aside or withdrawn, however, no proceedings to actually withdraw the plea[] or set aside the conviction[] have been initiated or completed. In all cases, to appeal from any conviction on a plea of guilty . . ., the defendant must have filed in the trial court clerk's office an application to withdraw the plea, and must have appealed to this Court if the motion is denied. [Titsworth's] conviction[] in . . . 84-51 [is] final and his sentence[] ha[s] been completed. He has waived any opportunity to have his conviction[] vacated and set aside.

(R. Vol. I at 35 (citation omitted).)[6]

Subsequently, Titsworth filed a petition for writ of mandamus to the Oklahoma

---

[6] The OCCA's characterization of the post-conviction orders seems inconsistent with the March 31, 2000 order of the trial court:

> [Post-Conviction Relief] All cases—Motion to Set aside plea granted. Defendant pleads not guilty, bond $20,000 each case. First of the four cases will be set for trial on 6-5 jury docket. 93-1017 & 84-51 REV both cases set 4-14-00 @ 9:00. Appoint MIDS.

(R. Vol. I at 118); s*ee discussion supra* at 2.

Supreme Court again asking that he be granted enhanced credits. The Supreme Court transferred the petition to the OCCA,[7] which dismissed it as moot because it had already denied his previous petition.

## II.    PROCEDURAL BACKGROUND

On October 21, 2009, Titsworth filed a habeas petition in district court, arguing the ODOC was improperly denying him enhanced credits to his sentence. He claimed an award of these enhanced credits would entitle him to immediate release. The State moved to dismiss alleging Titsworth's petition was untimely as it was filed after the one-year statute of limitations had expired.[8] The district court agreed. It said the limitations period began to run on March 4, 2005, when the "Eligibility for Enhanced Level 3 and 4 Credits" form was completed showing Titsworth was not entitled to enhanced credits to his sentence because of his prior conviction in 84-51. It relied on the form notation "cc: Offender" concluding that notation demonstrated it was sent to Titsworth. Because Titsworth did not file his § 2241 petition until over four years later, the court concluded it was time-barred.

Titsworth moved to alter or amend judgment, arguing he was entitled to equitable tolling of the limitations period; he also sought an evidentiary hearing. He alleged he

---

[7] *See State ex rel. Henry v. Mahler*, 786 P.2d 82, 85-87 (Okla. 1990) (OCCA has exclusive appellate jurisdiction in a criminal case, including an inmate's challenge to a denial of sentencing credits).

[8] The State also sought dismissal based on Titsworth's failure to exhaust his administrative remedies. The district court declined to dismiss on that ground so exhaustion is not an issue here.

never received the March 4, 2005 form and did not learn of the ODOC's enhanced credit policy until a fellow inmate informed him of it on February 15, 2006. And, from that date forward, he says he diligently pursued his claims. The district court responded that even assuming Titsworth did not receive the March 4, 2005 form, he was "notified" monthly that he was not receiving enhanced credits when he received his time sheet reflecting no award of enhanced credits. (R. Vol. I at 192 (quotations omitted).) It also concluded Titsworth could not rely on the June 25, 2007 "Request to Staff" because it was filed after the limitations period had expired. It denied the motions.

### III. DISCUSSION

A state prisoner seeking to appeal the denial of a 28 U.S.C. § 2241 petition must obtain a COA. *Montez v. McKinna*, 208 F.3d 862, 867, 869 (10th Cir. 2000). A COA is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The district court's procedural dismissal means Titsworth must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

A.      Statute of Limitations Trigger Date

The one-year limitations period of the Antiterrorism and Effective Death Penalty

Act (AEDPA), 28 U.S.C. § 2244(d)(1), applies to the filing of a § 2241 petition.  *See*

*Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006).  Relevant here is subsection

(d)(1)(D) which says the statute of limitations shall run from "the date on which the

factual predicate of the claim or claims presented could have been discovered through the

exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  The district court first

determined Titsworth's claim arose on March 4, 2005, when he received the form

advising he was not eligible for enhanced credits due to his conviction in 84-51.  But in

his motion to alter or amend judgment, Titsworth denied having received the form and

there is no definitive evidence showing it was sent to him.  The district court did not hold

an evidentiary hearing to resolve the issue.  Instead, it relied on Titsworth's receipt of

monthly time sheets.  Consequently, we draw no inference of notice (adverse to

Titsworth) from the March 4, 2005 form.

The district court concluded the monthly time sheets notified Titsworth he was not

receiving enhanced credits to his sentence.  Titsworth does not agree, arguing an inmate,

like himself, who is unaware of the prison's enhanced credit policy would not realize

from the time sheets that he was not receiving enhanced credits.  The only time sheet in

the record—the July 2005 time sheet—shows Titsworth earned 33 credits that month.

**[Vol. I at 60]** It does not indicate whether or not they are enhanced credits.  But Okla.

Stat. Ann. tit. 57 § 138 clearly provides that had Titsworth been eligible for enhanced

credits, he would have received 45 or 60 credits.  *See supra* n.4.  Titsworth had access to

- 10 -

this statute via the prison's law library, s*ee* http://www.doc.state.ok.us/offtech/toc03.htm (Attachment A to OP-030115). Therefore, we decline to excuse his failure to exhaust based on his alleged lack of knowledge of the policy.

In any event, Titsworth's § 2241 petition is untimely for another reason. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) ("We are free to affirm the rulings of a district court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning.") (quotations omitted). By his own admission, Titsworth learned of the ODOC's enhanced credit policy and the fact he was not receiving enhanced credits due to his conviction in 84-51 in February 2006. Yet, he did not file his § 2241 petition until October 21, 2009, well past the one-year deadline.

### B. Statutory Tolling

Titsworth sought relief from the state courts. Usually the running of the statute of limitations is suspended while a prisoner is pursuing relief in the state courts. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). However, Titsworth initially only requested copies of orders; he did not seek substantive relief until August 5, 2008 (approximately two and half years after he admits to having received notice of the prison's enhanced credit policy), when he filed a pro se petition for writ of mandamus with the OCCA. That was too late as the federal limitations period had already expired. *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001)

(stating petitioner's state petitions for post-conviction relief did not toll the limitations period because they were not filed until after the limitations period had already run).

    C.    <u>Administrative Tolling</u>

A § 2241 petition relates to the execution of a sentence (as opposed to a 28 U.S.C. § 2254 petition which relates to the validity of a conviction). *Dulworth*, 442 F.3d at 1268. Consequently, a § 2241 petition often challenges a prison administrative decision rather than a state court judgment. In such situations, we require inmates to exhaust their administrative remedies prior to filing a § 2241 petition. *See Garza v. Davis,* 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement."). Titsworth did so, seeking to resolve the matter administratively before filing the instant action.

The "*timely and diligent* exhaustion of administrative remedies" can toll the statute of limitations. *Dulworth*, 442 F.3d at 1268 (emphasis added). Titsworth diligently pursued administrative relief. He did not, however, <u>timely</u> do so. He waited over a year after learning he was being denied enhanced credits due to his conviction in 84-51 to file his first "Request to Staff."[9] Therefore, he did not begin to exhaust his administrative remedies until after the limitations period had already expired. Consequently, his exhaustion of administrative remedies, however diligent, did not toll

---

[9] Titsworth claims the year delay resulted from the records department's failure to respond after Brown (his case manager) provided the department with Judge Norman and Judge Alford's orders. While such facts may excuse a short delay, they hardly support a year delay.

the limitations period. *See cf. Fisher*, 262 F.3d at 1142-43. He is not entitled to administrative tolling.

　　D.　　Equitable Tolling

Assuming equitable tolling even applies in this case,[10] a petitioner is entitled to equitable tolling only if he demonstrates (1) he diligently pursued his rights and (2) some extraordinary circumstance prevented his timely filing. *See Holland v. Florida*, -- U.S.--, 130 S. Ct. 2549, 2560, 2562 (2010) (holding statute of limitations period defined in 28 U.S.C. § 2244(d) is subject to equitable tolling). Titsworth has failed to satisfy either prong.

We have already concluded that although Titsworth may have diligently pursued his rights, he did not timely do so, having waited over a year after learning he was not receiving enhanced credits to file his first "Request to Staff." Moreover, after his "Request to Staff" was denied, he waited two more months before he allegedly wrote a letter to the ODOC's attorney regarding the matter and another four months before he wrote to the ODOC's sentence administrator and Judge Norman. Although he received responses from the sentence administrator and Judge Norman by the end of January 2008,

---

[10] We have not expressly held that equitable tolling applies in cases involving § 2241 petitions. However, we have applied it in a number of such cases. *See Burger v. Scott*, 317 F.3d 1133, 1141-44 (10th Cir. 2003); *see also, e.g., Steffey v. Sirmons*, 273 Fed. Appx. 748, 750-51 (10th Cir. 2008) (unpublished); *Marques v. Burnett*, 62 Fed. Appx. 247, 249 (10th Cir. 2003) (unpublished). We have also held that § 2241 petitions are subject to the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1), *see Dulworth*, 442 F.3d at 1268, which the Supreme Court recently held is subject to equitable tolling. *See Holland v. Florida*, -- U.S.--, 130 S. Ct. 2549, 2560, 2562 (2010) (holding statute of limitations period defined in 28 U.S.C. § 2244(d) is subject to equitable tolling).

Titsworth waited another six months, until July 10, 2008, to file another "Request to Staff." These significant time gaps do not demonstrate the required diligence. Titsworth has also not alleged, nor shown, that some extraordinary circumstance beyond his control prevented him from timely filing his § 2241 petition.

The abbreviated record before us suggests the ODOC and the Oklahoma state courts may have been insufficiently attentive to his arguments. Nevertheless, Titsworth here seeks a <u>federal</u> remedy, upon which strict time limits apply. While he may have diligently pursued his claim once he undertook to do so, he started too late. Our sympathy for his circumstances cannot trump positive law.

We **DENY** a COA and **DISMISS** this matter.

> **Entered by the Court:**
>
> **Terrence L. O'Brien**
> United States Circuit Judge