LUCERO, J., concurring.
I write separately to explain that the Suspension Clause issue presented by Gonzalez-Alarcon is not resolved by the fact that he had a prior opportunity to file a petition for review. Gonzalez-Alarcon's claim of United States citizenship, like a prisoner's assertion of actual innocence, cannot be rejected as barred by procedural impediments contained in the REAL ID Act. The Great Writ, as protected by the Suspension Clause, necessarily includes the power to excuse procedural errors to cure a miscarriage of justice.
I
As the Supreme Court itself had noted, there is a dearth of case law on the adequacy of a substitute for habeas, reflecting "the care Congress has taken throughout our Nation's history to preserve the writ and its function." Boumediene v. Bush, 553 U.S. 723, 773, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008). In Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Court held that limitations on second or successive petitions contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") were "well within the compass" of the doctrine of "abuse of the writ," a "complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." Id. at 664, 116 S.Ct. 2333. Other cases on habeas substitutes provide "little guidance" because the statutes at issue in those cases "were attempts to streamline habeas corpus relief, not to cut it back." Boumediene, 553 U.S. at 773, 128 S.Ct. 2229 (citing Swain v. Pressley, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977), and United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952) ).[1]
*1283 However, the Court has identified several "uncontroversial" "requisites for an adequate substitute for habeas corpus." Boumediene, 553 U.S. at 779, 128 S.Ct. 2229. First, a prisoner must be afforded "a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." Id. Second, "the habeas court must have the power to order the conditional release of an individual unlawfully detained." Id. And "depending on the circumstances, more may be required." Id. Gonzalez-Alarcon's circumstances demand more.
The scope of habeas review, the Court explained, "in part depends upon the rigor of any earlier proceedings." Id. at 781, 128 S.Ct. 2229. If habeas "relief is sought from a sentence that resulted from the judgment of a court of record ..., considerable deference is owed to the court that ordered confinement." Id. at 782, 128 S.Ct. 2229. In such cases, "the prisoner should exhaust adequate alternative remedies before filing for the writ in federal court." Id. In contrast, if "a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing." Id. at 783, 128 S.Ct. 2229. Executive detention orders and review procedures lack "a tribunal disinterested in the outcome and committed to procedures designed to ensure its own independence." Id. Under these conditions, a "habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." Id. Although the Court cautioned that an adequate substitute need not "duplicate § 2241 in all respects," it concluded the tribunals at issue in that case were inadequate. Id. at 792, 128 S.Ct. 2229.
Like the Supreme Court, this circuit has said relatively little about the Suspension Clause. In assessing whether AEDPA's limitations period violates that provision, we noted that "[t]here may be circumstances where the limitation period at least raises serious constitutional questions and possibly renders the habeas remedy inadequate and ineffective." Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). But we held that such circumstances were not present because "§ 2244(d) is not jurisdictional and as a limitation may be subject to equitable tolling," and the petitioner did not argue "that a constitutional violation has resulted in the conviction of one who is actually innocent." Id.; see also Fisher v. Gibson, 262 F.3d 1135, 1145 (10th Cir. 2001) (rejecting AEDPA Suspension Clause argument because petitioner had not "claimed due process violations have resulted in the erroneous conviction of an innocent man").[2]
*1284 Other circuits have similarly held that AEDPA's restrictions are generally constitutional while leaving open the possibility that an as applied challenge could be successful for an individual claiming actual innocence. See Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1217 n. 3 (11th Cir. 2000) (collecting cases).
II
Our consideration of actual innocence in assessing Suspension Clause claims is necessary. The Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." Hensley v. Mun. Court, 411 U.S. 345, 350, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). The writ "never has been a static, narrow, formalistic remedy." Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Instead, the writ's "capacity to reach all manner of illegal detention" and "its ability to cut through barriers of form and procedural mazes ... have always been emphasized and jealously guarded by courts and lawmakers." Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Id.
Based on these principles, the Court has held that a compelling showing of actual innocence will excuse both procedural default and untimeliness under AEDPA. McQuiggin v. Perkins, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013). This doctrine is consistent with pre-AEDPA jurisprudence. Procedural default could be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quotation omitted). Similarly, the doctrine of "abuse of the writ," under which courts could dismiss second or successive habeas petitions raising claims that could have been brought in an initial petition, gave way if "a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).
These exceptions to various procedural obstacles developed in more recent times, but only because the obstacles themselves are of relatively recent vintage. In other words, the procedural doctrines and exceptions arose together. State prisoners were not permitted to file federal habeas petitions prior to 1867, with some limited exceptions, see Felker, 518 U.S. at 659-60, 116 S.Ct. 2333, and thus there was no need for a state exhaustion doctrine at the time of the founding. The seminal Supreme Court case establishing that state prisoners may be required to exhaust state remedies before filing suit, Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), itself held that exhaustion may "be subordinated to any special circumstances requiring immediate action." Id. at 253, 6 S.Ct. 734. As to federal prisoners, the Supreme Court generally held that "habeas corpus is not to be made use of as a writ of error" and "the ordinary procedure for the correction of errors in criminal cases is by writ of error." In re Lincoln, 202 U.S. 178, 182, 26 S.Ct. 602, 50 L.Ed. 984 (1906). But the Court also recognized there may "be special circumstances calling for a departure" from that general rule. Id.
*1285 Similarly, in the first Supreme Court case using the phrase "abuse of the writ" in reference to habeas, the Court concluded that, even if a petitioner had prior knowledge of the facts underlying his new claim, the "petitioner may be able to present adequate reasons for not making the allegation earlier, reasons which make it fair and just for the trial court to overlook the delay." Price v. Johnston, 334 U.S. 266, 291, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). "The primary purpose of a habeas corpus proceeding is to make certain that a man is not unjustly imprisoned," the Court explained, "[a]nd if for some justifiable reason he was previously unable to assert his rights or was unaware of the significance of relevant facts, it is neither necessary nor reasonable to deny him all opportunity of obtaining judicial relief." Id. This flexibility derives from common law habeas, under which "the denial by a court or judge of an application for habeas corpus was not res judicata." Sanders v. United States, 373 U.S. 1, 7, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). In short, the habeas remedy at both common law and in its contemporary form unfailingly provided various safety valves to avoid true miscarriages of justice. See Harris, 394 U.S. at 291, 89 S.Ct. 1082.
To say that the habeas remedy has consistently been interpreted to provide some degree of flexibility is not to say that Congress is precluded from establishing reasonable limitations on its use. See Felker, 518 U.S. at 664, 116 S.Ct. 2333. Some circuits have refused to permit resort to habeas for individuals who failed to raise an issue in a petition for review. See, e.g., Muka v. Baker, 559 F.3d 480, 486 (6th Cir. 2009) ("Simply because the Mukas failed to make a known argument during their prior proceedings does not mean that we must grant them a second bite at the apple to satisfy the Suspension Clause's requirements."); Mohamed v. Gonzales, 477 F.3d 522, 526 (8th Cir. 2007) (rejecting Suspension Clause challenge based on inability to advance new evidence in a petition for review because petitioner "could have introduced the [evidence] during the removal proceedings, on appeal to the Board (when he was represented by counsel), or through a motion to reopen"). But those cases did not involve citizenship claims.
For an individual detained by ICE, a citizenship claim is akin to the assertion of actual innocence which requires procedural barriers otherwise barring such claims to give way. That is, if we analogize the finding that Gonzalez-Alarcon is removable to a state court conviction, his plausible allegation of citizenship would show that he is not removable in the same way that a state prisoner might show he did not commit the crime of conviction. Notably, the actual innocence exception applies following a judicial determination of guilt. And if "a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing." Boumediene, 553 U.S. at 783, 128 S.Ct. 2229. As the Supreme Court has said, the habeas remedy requires "the initiative and flexibility essential to insure that miscarriages of justice" are corrected as to prisoners following conviction. Nelson, 394 U.S. at 291, 89 S.Ct. 1082. It follows that the writ, by its "very nature," demands the same for those detained by bare executive authority. Id.
To continue the state court analogy, the REAL ID Act's barriers to review could be treated as a time bar (Gonzalez-Alarcon failed to file a timely petition for review) or a procedural bar (he failed to present his claim and related evidence in administrative proceedings). In either event, a compelling showing of actual innocence would provide a gateway through which to present a habeas claim. The actual innocence or miscarriage of justice exception has *1286 been applied to overcome a variety of procedural hurdles, including "successive petitions asserting previously rejected claims, abusive petitions asserting in a second petition claims that could have been raised in a first petition, failure to develop facts in state court, and failure to observe state procedural rules, including filing deadlines." Perkins, 133 S.Ct. at 1931-32 (quotations and citations omitted). Further, "unjustifiable delay on a habeas petitioner's part" is "not as an absolute barrier to relief," but may be treated "as a factor in determining whether actual innocence has been reliably shown." Id. at 1928 ; see also Lopez v. Trani, 628 F.3d 1228, 1230-31 (10th Cir. 2010) ("[A] sufficiently supported claim of actual innocence creates an exception to procedural barriers for bringing constitutional claims[ ] regardless of whether the petitioner demonstrated cause for the failure to bring these claims forward earlier.").
The Court has not yet decided whether a prisoner may assert a "freestanding claim of actual innocence." Perkins, 133 S.Ct. at 1931. Instead, it has treated actual innocence as a gateway through which prisoners may pursue otherwise barred constitutional claims. Id. In this instance, Gonzalez-Alarcon's allegation that he is a citizen is itself a constitutional claim. Lack of jurisdiction to detain has always been a basis for habeas relief. "Originally, criminal defendants whose convictions were final were entitled to federal habeas relief only if the court that rendered the judgment under which they were in custody lacked jurisdiction to do so." Danforth v. Minnesota, 552 U.S. 264, 271, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (citing Ex parte Siebold, 100 U.S. 371, 376-377, 25 L.Ed. 717 (1880) ; Ex parte Lange, 18 Wall. 163, 176, 21 L.Ed. 872 (1874) ; Ex parte Watkins, 3 Pet. 193, 28 U.S. 193, 7 L.Ed. 650 (1830) ); see also Wandes, 713 F.3d at 554 (noting that habeas corpus as it existed at the time of the founding was available "to inquire whether a committing court had proper jurisdiction" (quoting Swain, 430 U.S. at 385, 97 S.Ct. 1224 (Burger, C.J., concurring) ). And as noted in the majority opinion, ICE clearly lacks jurisdiction to detain or remove a United States citizen. Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922). Moreover, executive detention and removal of a citizen "obviously deprives him of liberty" and thus "[a]gainst the danger of such deprivation without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guarantee of due process of law." Id. at 285, 42 S.Ct. 492.
III
Because Gonzalez-Alarcon's allegation of United States of citizenship closely mirrors an assertion of actual innocence, which habeas law has consistently recognized as permitting an exception to otherwise applicable procedural impediments, his Suspension Clause challenge must be assessed with respect to his present ability to obtain relief under the REAL ID Act rather than any prior forfeited opportunities.

As the majority explains, the Fifth Circuit has elsewhere upheld the Board of Immigration Appeals' conclusion that the departure bar removes its jurisdiction to sua sponte reopen or reconsider cases. See Navarro-Miranda v. Ashcroft , 330 F.3d 672, 676 (5th Cir. 2003). To the extent the Board maintains this interpretation, that would mean Gonzalez-Alarcon cannot pursue review under the Board's sua sponte authority. But that does not eliminate his path to review by filing a motion himself.

To determine if a petitioner may rely on the "savings clause" of § 2255(e), we ask "whether a petitioner's argument challenging the legality of his detention could have been tested in an initial § 2255 motion. If the answer is yes, then the petitioner may not resort to the savings clause and § 2241." Prost v. Anderson, 636 F.3d 578, 584 (10th Cir. 2011). Although both the savings clause and Suspension Clause analyses use the term "adequate," we considered savings clause and Suspension Clause arguments separately in Abernathy v. Wandes, 713 F.3d 538, 551, 555 (10th Cir. 2013). We noted that the test set forth in in Prost as to the savings clause was a "matter of statutory interpretation." Abernathy, 713 F.3d at 555. And we acknowledged that the Supreme Court applied a somewhat different test in Boumediene, at least in the context of executive detention. Id.
Further, jurisprudence regarding the savings clause is necessarily inapposite to the question of whether an alternative remedy is adequate to challenge executive detention if it lacks the fail-safe provisions of traditional habeas review. The savings clause is itself a fail-safe provision-one of several contained in § 2255-and thus, as a logical matter, cannot tell us whether a remedy without similar escape hatches is adequate.