FILED
United States Court of Appeals
Tenth Circuit

April 8, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GARY ABERNATHY,

　　　　　　Petitioner-Appellant,

v.

WARDEN JULIE WANDES,

　　　　　　Respondent-Appellee.

No. 10-1252

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:10-CV-00521-LTB)**

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Denver, Colorado, for Petitioner-Appellant.

Michael A. Rotker, Attorney, Appellate Section, United States Department of Justice, Criminal Division (Lanny A. Breuer, Assistant Attorney General; Greg D. Andres, Acting Deputy Assistant Attorney General; John F. Walsh, United States Attorney; and Paul Farley, Assistant United States Attorney, with him on the briefs), Washington D.C. and Denver, Colorado, for Respondent-Appellee.

Before **HARTZ**, **EBEL**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Petitioner Gary Abernathy, a federal prisoner, appeals from the judgment of the United States District Court for the District of Colorado, which dismissed his 28 U.S.C. § 2241 petition for a writ of habeas corpus. By way of § 2241, Mr. Abernathy seeks to have an alleged error of law in the calculation of his sentence corrected based upon a subsequently issued Supreme Court decision interpreting the Armed Career Criminal Act ("ACCA"), *see Chambers v. United States*, 555 U.S. 122 (2009), despite the fact that his conviction became final many years ago.

In 2001, Mr. Abernathy was convicted in the United States District Court for the Western District of Missouri of being a felon in possession of a firearm and was sentenced as an armed career criminal under the ACCA because he had three qualifying ACCA convictions. Consistent with Eighth Circuit precedent at that time, the district court determined that Mr. Abernathy's 1979 conviction for a "walkaway" escape was a qualifying conviction under the ACCA. Mr. Abernathy unsuccessfully challenged this determination on direct appeal. Subsequently, he filed a motion under 28 U.S.C. § 2255 in the sentencing court seeking to raise on collateral review several seemingly unrelated challenges. The district court denied relief and the Eighth Circuit declined to grant a Certificate of Appealability ("COA") under 28 U.S.C. § 2253(c)(1).

Several years after Mr. Abernathy's 2001 conviction appeared to be final, the Supreme Court decided *Chambers*, which held that an escape conviction based on a failure to report (or to return) to a penal facility falls outside the scope of the

2

ACCA's definition of a violent felony and therefore cannot serve as a qualifying ACCA conviction. *See* 555 U.S. at 127, 130. Believing his 1979 walkaway escape to be the type of conviction that is not a qualifying ACCA conviction under *Chambers*, Mr. Abernathy filed a motion with the Eighth Circuit seeking the requisite authorization to file a second motion with the sentencing court under 28 U.S.C. § 2255. *See generally In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008) ("A district court does not have jurisdiction to address the merits of a second or successive § 2255 or 28 U.S.C. § 2254 claim until [the applicable circuit] court has granted the required authorization."). The Eighth Circuit denied relief.

Subsequently, Mr. Abernathy filed a § 2241 petition in the federal judicial district of his incarceration—the United States District Court for the District of Colorado—to challenge his sentence. Mr. Abernathy sought to use the so-called "savings clause" contained in § 2255(e), which permits a federal prisoner to proceed under § 2241 when the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." Without reaching the merits of Mr. Abernathy's *Chambers* claim, the district court—applying the Fifth Circuit's savings clause test (*see Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001))—dismissed his § 2241 petition, reasoning that Mr. Abernathy failed to meet the "actual innocence" prong of that test because one cannot be "actually innocent" of a sentencing enhancement.

3

After the district court's decision, however, we decided *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011), which set forth a different savings clause test than the one that the district court applied. Mr. Abernathy contends that he satisfies *Prost*'s savings clause test because the law-of-the-case doctrine precluded him, in his initial § 2255 petition, from challenging whether his escape conviction was a predicate crime under the ACCA. And, even if we were to conclude otherwise, he argues, denying him the opportunity to proceed under § 2241 would have the effect of violating the Constitution's Suspension Clause—a result that we must avoid.

We disagree with Mr. Abernathy on both scores. First, we conclude that, even assuming *arguendo* that the law-of-the-case doctrine would have had the effect of foreclosing Mr. Abernathy's *Chambers* argument in his initial § 2255 proceeding, it would not follow that § 2255 was an inadequate or ineffective procedural vehicle for testing the validity of his confinement. Second, reviewing for plain error, we determine that it is not clear or obvious under well-settled law that barring Mr. Abernathy from proceeding under § 2241 raises concerns under the Suspension Clause.

Accordingly, we affirm the district court's dismissal of Mr. Abernathy's § 2241 habeas petition for lack of statutory jurisdiction.

# I

In 2001, Mr. Abernathy was convicted of unlawful possession of a firearm

4

by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The 2001 Presentence Report ("PSR") recommended that Mr. Abernathy be sentenced as an armed career criminal under the ACCA because his criminal history included three prior "violent felony" convictions: (1) a 1973 federal assault conviction; (2) the 1979 federal escape conviction; and (3) a 1990 Kansas state court conviction for aggravated robbery.[1] Over Mr. Abernathy's objection that his 1979 escape conviction did not qualify under the ACCA, the district court sentenced him to 293 months' imprisonment as an armed career criminal.

On direct appeal to the Eighth Circuit, Mr. Abernathy again argued that his 1979 escape conviction was not a qualifying conviction under the ACCA. The Eighth Circuit affirmed the district court, holding that the fact that Mr. Abernathy "merely walked away from his place of incarceration" did not take his conviction outside § 924(e)'s definition of a violent felony. *United States v. Abernathy*, 277 F.3d 1048, 1051 (8th Cir. 2002). Mr. Abernathy filed a petition for certiorari to the United States Supreme Court, but it was denied.

In 2002, Mr. Abernathy filed a pro se § 2255 petition to vacate his sentence in the Western District of Missouri, asserting several claims that were seemingly unrelated to his challenge to the ACCA predicate-offense status of his 1979 escape conviction. The district court denied the motion. Subsequently, the

---

[1] Whether the first and third convictions are qualifying convictions under the ACCA is not at issue in this appeal.

5

Eighth Circuit denied Mr. Abernathy a COA and dismissed the matter.

In 2008, the Supreme Court held that a prior conviction does not constitute a "violent felony" under the ACCA unless it involves "purposeful, violent, and aggressive conduct." *Begay v. United States*, 553 U.S. 137, 144–45 (2008) (citation omitted) (internal quotation marks omitted). Following *Begay*, in *Chambers*, the Supreme Court held that a conviction for failure to report to a penal institution (for weekend confinement) is not a "violent felony" under the ACCA. *See Chambers*, 555 U.S. at 128 (noting that the offense of failure to report "does not involve conduct that presents a serious potential risk of physical injury to another" (quoting *Begay*, 553 U.S. at 141–42) (internal quotation marks omitted)).

In response to *Chambers*, and after the denial of various habeas petitions he filed in the Eighth Circuit, Mr. Abernathy filed a pro se application for a writ of habeas corpus pursuant to § 2241 in the United States District Court for the District of Colorado, the district where he was incarcerated.[2] In his application, Mr. Abernathy argued that he should be permitted to proceed with his § 2241

---

   [2]   Section 2241 petitions must be filed in the federal judicial district of the prisoner's incarceration. *See* 28 U.S.C. § 2241(a). Section 2255 motions, on the other hand, must be filed in the district in which the prisoner was sentenced. *See* 28 U.S.C. § 2255; *see also Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (discussing the proper judicial district for filing § 2241 petitions and § 2255 motions). Because Mr. Abernathy was sentenced in the Western District of Missouri, he filed his § 2255 motions in that district.

6

petition because § 2255 is "inadequate and ineffective to test the legality of [his] conviction" given that:

> (1) at the time of the conviction, settled law of the circuit or the Supreme Court established the legality of the conviction; (2) subsequent [to his] direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which [he] was convicted is deemed not to be criminal; and (3) [he] cannot satisfy the gatekeeping provisions of § 2255 because the new rule [i.e., *Chambers*] is not one of constitutional law.[3]

R. at 10–11 (Appl. for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, filed Mar. 5, 2010).

Mr. Abernathy asserted that *Chambers* was retroactive to cases on collateral review because it announced a substantive rule regarding the ACCA's meaning, and that after *Chambers*, he was "actually innocent" of his armed-career-criminal status because his 1979 escape conviction was no longer a qualifying ACCA conviction. Thus, according to Mr. Abernathy, he did not have three prior violent felony convictions within the meaning of the ACCA.

The magistrate judge ordered Mr. Abernathy to show cause as to why his § 2241 petition should not be denied, stating that "[t]he exclusive remedy for

---

[3]     Mr. Abernathy is correct that § 2255(h), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 105, 110 Stat. 1214 (1996), prevents him from bringing a second or successive application based upon his *Chambers* argument. Such motions are limited to those that rely on newly discovered evidence of innocence or new rules of constitutional law that the Supreme Court makes retroactive to cases on collateral review. *See* 28 U.S.C. § 2255(h). Mr. Abernathy's application is not based on newly discovered evidence of innocence and *Chambers* is not a new rule of *constitutional* law that the Supreme Court has made retroactive. Thus, Mr. Abernathy's application would not qualify under § 2255(h).

7

testing the validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. § 2255," *id.* at 30 (Order to Show Cause, filed Apr. 6, 2010) (quoting *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965) (per curiam)) (internal quotation marks omitted), and Mr. Abernathy had not demonstrated that "the remedy available to him pursuant to § 2255 [was] inadequate or ineffective," *id.*

Mr. Abernathy filed six separate responses to the magistrate judge's order to show cause. Mr. Abernathy has explained that, in these six responses, he argued to the district court that "through no fault of his own, he had no way of obtaining relief other than by way of § 2241, and relief was appropriate under that statute."[4] Aplt. Supp. Opening Br. at 8.

Without requesting a response from the government, the district court dismissed Mr. Abernathy's § 2241 petition. The district court first noted that the exclusive remedy for testing the validity of a sentence is that provided for in § 2255, unless § 2255's remedy is inadequate or ineffective to test the legality of

---

[4]    Although at times difficult to interpret, Mr. Abernathy made a host of arguments in his six responses: (1) he maintained that his argument regarding his 1979 escape conviction was preserved when he had argued the same to the Eighth Circuit on direct appeal; (2) under *Bousley v. United States*, 523 U.S. 614 (1998), and *Davis v. United States*, 417 U.S. 333 (1974), a new rule of law must apply retroactively in postconviction proceedings; (3) he was prevented from previously presenting his claim since *Chambers* had yet to be decided; (4) his claim is not barred by *Teague v. Lane*, 489 U.S. 288 (1989), because *Chambers* reached the substantive part of a federal statute; and (5) he is actually innocent of committing one of the predicate-offense violent felonies under the ACCA.

his detention. Applying the Fifth Circuit's savings clause test from *Reyes-Requena*, that a panel of our court had previously cited with approval in *United States v. Apodaca*, 90 F. App'x 300, 304 n.10 (10th Cir. 2004), the district court held that Mr. Abernathy could not meet the "actual innocence" prong of that test because being "actually innocent" of an enhanced sentence is "not the sort of actual innocence that could justify a determination that the remedy available pursuant to Section 2255 in his criminal case is inadequate or ineffective." R. at 60–61 (Dist. Ct. Order of Dismissal, filed May 26, 2010).

Mr. Abernathy, still proceeding pro se, filed a timely notice of appeal. In his opening brief to our court, he again argued that he was "actually innocent" of the enhancement he received under the ACCA and that he should be allowed to proceed under § 2241 because § 2255 was inadequate or ineffective. Upon Mr. Abernathy's request, we appointed counsel to represent him—the Federal Public Defender for the District of Colorado. *See* Order, No. 10-1252, at *1 (10th Cir., filed Sept. 24, 2010) (appointing counsel and addressing supplemental briefing). We directed counsel to address any issues it deemed appropriate as well as the following:

> Whether the remedy under 28 U.S.C. § 2255 would be "inadequate or ineffective"—thereby permitting Mr. Abernathy to challenge his sentence under 28 U.S.C. § 2241—if the gatekeeping language of § 2255(h)(2) would not authorize the retroactive application of the Supreme Court's case *Chambers v. United States*, 129 S. Ct. 687 (2009) to cases on collateral review, and that case can be deemed to have had the effect of

9

> rendering Mr. Abernathy "innocent" of the enhancement that he received under the Armed Career Criminal Act.

*Id.* at \*2–3. However, before Mr. Abernathy filed his reply brief, we issued *Prost*, which seemingly addressed many of the same issues found in this case. *See* 636 F.3d at 584–93. We therefore granted the parties leave to file simultaneous supplemental briefs addressing *Prost*.

## II

The broad issue on appeal is whether the district court erred in dismissing Mr. Abernathy's petition under § 2241. We review the court's determination de novo. *See, e.g.*, *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011) ("We review the district court's dismissal of a § 2241 habeas petition de novo." (quoting *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010)) (internal quotation marks omitted)). However, there is little agreement between the parties as to the various sub-issues that are relevant to deciding whether Mr. Abernathy can proceed under § 2241. We begin by identifying the specific arguments presented by the parties.

Mr. Abernathy argues that: (1) *Chambers* renders illegal the enhancement of his sentence under the ACCA; (2) he has no adequate or effective remedy under § 2255 and, therefore, § 2255(e)'s savings clause allows him to apply for relief under § 2241; and (3) were we to deny him access to habeas relief via the savings clause, such a denial would have the effect of suspending his right to seek

10

a writ of habeas corpus in violation of the Suspension Clause.

The government, however, believes that it is unnecessary for us to reach any of the issues that Mr. Abernathy has framed. Instead, the government asserts that we may resolve this case by ruling that Mr. Abernathy has failed to make a clear threshold showing of actual innocence under *Chambers* and, consequently, he is not entitled to proceed under § 2241.[5]

Finally, further complicating matters, the district court did not address any

---

[5] There are four motions pending in this case. Three of them are motions to take judicial notice of, and supplement the record with, additional evidence regarding Mr. Abernathy's 1979 escape conviction; the government has filed two of them, one of which is a sealed motion, and Mr. Abernathy has filed the other one. Because (for reasons discussed *infra*) we ultimately do not reach the merits of Mr. Abernathy's challenge to his 1979 escape conviction under *Chambers*, we deny all three of these motions as moot.

In the fourth motion, Mr. Abernathy seeks to strike the government's "errata sheet." In a filing styled an "errata sheet," the government seeks to alter and withdraw certain legal positions taken in its answer brief. An errata sheet, however, is a filing by which a party corrects technical, inadvertent *errors*, rather than one by which it makes substantive alterations to legal positions previously taken in its brief. In other words, an errata sheet is not a proper vehicle for the request that the government presents here. *Cf. Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("We do not condone counsel's allowing for material changes to deposition testimony [by way of an errata sheet]."). Accordingly, we grant Mr. Abernathy's motion to strike the government's errata sheet. Furthermore, regarding a related matter, we decline the government's late-blooming request—made in its Supplemental Reply Brief—to treat its errata sheet as a motion to withdraw legal positions taken in its answer brief. We have no occasion to decide whether such a withdrawal request would have been granted if the government actually had filed a motion to withdraw or made such a request in a more conventional, and at least arguably proper, fashion—e.g., in its timely reply brief or at oral argument. *See United States v. Scott*, 529 F.3d 1290, 1300 n.11 (10th Cir. 2008) (granting the government's motion to withdraw an argument). That is because the government did not follow such a conventional route here, despite ample opportunity to do so. Thus, we decline the government's belated request that we treat its errata sheet as a motion to withdraw.

11

of the issues—as the parties have now framed them—in its order dismissing Mr. Abernathy's § 2241 petition, likely in part because it did not have the benefit of our decision in *Prost* when issuing its order. Instead, the district court relied on the Fifth Circuit's savings clause test set forth in *Reyes-Requena* and found that Mr. Abernathy could not satisfy that test. In *Prost*, however, we declined to follow *Reyes-Requena*'s savings clause test and created our own. *See Prost*, 636 F.3d at 584, 592.

Given our intervening decision in *Prost*, we must deviate from the path that the district court traveled.[6] And, furthermore, we decline to determine (as the

---

[6] In *Reyes-Requena*, the Fifth Circuit held "that the savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense [i.e., may be actually innocent] and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion." 243 F.3d at 904. The district court found that Mr. Abernathy could not meet the "actual innocence factor" of the *Reyes-Requena* savings clause test because being "actually innocent" of an enhanced sentence is "not the sort of actual innocence that could justify a determination that the remedy available pursuant to § 2255 in his criminal case is inadequate or ineffective." R. at 60–61. In reaching this conclusion, the district court substantially relied on our case, *United States v. Richards*, 5 F.3d 1369 (10th Cir. 1993) (incorrectly cited by the district court as "*United States v. Rogers*").

The district court was correct that in *Richards* we stated that a defendant "cannot be actually innocent of a noncapital sentence." *Id.* at 1371; *accord United States v. Denny*, 694 F.3d 1185, 1191 (10th Cir. 2012) (same); *Laurson v. Leyba*, 507 F.3d 1230, 1233 (10th Cir. 2007) (same). However, as the district court recognized, our position on this issue is not pellucid. *See Selsor v. Kaiser*, 22 F.3d 1029, 1036 (10th Cir. 1994) (explaining, in dicta, that in the habitual offender context, like in the capital punishment context, a petitioner can be actually innocent of the sentence if he can show that he is factually innocent of a required showing of proof separate and distinct from that necessary to establish his guilt—e.g., in the habitual offender context, factual innocence

(continued...)

12

government urges) whether Mr. Abernathy has made a threshold showing of actual innocence, which the Fifth Circuit would require under *Reyes-Requena* and several other circuits would as well.[7] We begin by examining whether Mr.

_____

[6](...continued)
as to one of the prior qualifying convictions necessary to sentence him as an habitual offender); *see also Oliver v. Maxwell*, 185 F.3d 874, 1999 WL 390918, at *2 (10th Cir. 1999) (noting the conflict between *Richards* and *Kaiser* and declining to "resolve . . . the scope of the actual innocence doctrine in the context of non-capital habitual offender sentencing"). We need not address the correctness of the district court's ruling on the scope of the "actual innocence" doctrine because the analytical foundation for the court's decision—*Reyes-Requena*—is no longer apposite following the establishment of our own savings clause test in *Prost*, which, as Mr. Abernathy recognizes, does not include an actual innocence inquiry. *See Brace*, 634 F.3d at 1170 (rejecting a petitioner's claim that he meets *Reyes-Requena*'s "actual innocence" savings clause test on the grounds that we "explicitly declined to adopt the *Reyes-Requena* test in *Prost*"); *see also* Aplt. Supp. Reply Br. at 11 (recognizing that, under *Prost*, access to § 2241 through the savings clause turns solely on whether the remedy provided by § 2255 is "inadequate or ineffective" to test the legality of Mr. Abernathy's detention).

[7] As noted, the government's primary argument on appeal is that Mr. Abernathy must first make a threshold showing of actual innocence before he can proceed under § 2241 and he cannot do this. However, in *Prost*, we charted a much different course than many of our sister circuits regarding the proper scope of the savings clause. *Compare Prost*, 636 F.3d at 584–93, *with Ivy v. Pontesso*, 328 F.3d 1057, 1059–60 (9th Cir. 2003), *Reyes-Requena*, 243 F.3d at 904, *In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000), *In re Davenport*, 147 F.3d 605, 611–12 (7th Cir. 1998), *Triestman v. United States*, 124 F.3d 361, 373–80 (2d Cir. 1997), *and In re Dorsainvil*, 119 F.3d 245, 248–52 (3d Cir. 1997). Although our sister circuits have adopted somewhat disparate savings clause tests, most require a showing of "actual innocence" before a petitioner can proceed under § 2241. *See Cephas v. Nash*, 328 F.3d 98, 104 n.6 (2d Cir. 2003) (surveying the circuits' various savings clause tests and noting that they "generally focus[] on two issues," one of which is "the petitioner's actual innocence"); *Reyes-Requena*, 243 F.3d at 902–03 (discussing other circuits' savings clause tests and noting that most include an "actual innocence" component). Under the *Prost* framework, a showing of actual innocence is irrelevant. Accordingly, in resolving Mr. Abernathy's appeal—and, more specifically, whether he may proceed under § 2241—we have no need to delve into whether Mr. Abernathy has made a threshold showing of actual innocence.

13

Abernathy can demonstrate that he meets § 2255(e)'s savings clause. In so doing, we first address whether Mr. Abernathy has satisfied *Prost*'s savings clause test. More specifically, we assess Mr. Abernathy's argument that—because the law-of-the-case doctrine precluded the court deciding his initial § 2255 motion from reconsidering the decision made during his direct appeal that his 1979 escape conviction was a qualifying ACCA conviction—he could not have tested the legality of his detention in his initial § 2255 motion. We reject Mr. Abernathy's argument and hold that the potential or actual application of the law-of-the-case doctrine to an argument raised in a § 2255 motion does not mean that § 2255 is inadequate or ineffective, as the argument still could have been tested in that § 2255 proceeding.

Second, we address Mr. Abernathy's contention that denying him access to § 2241 would effect a violation of the Suspension Clause. Mr. Abernathy did not raise this Suspension Clause argument before the district court, nor does he ask for plain-error review on appeal. In many instances, this would foreclose our consideration of the argument. But, for reasons that we explain below, we give Mr. Abernathy the benefit of plain-error review. After concluding that Mr. Abernathy's Suspension Clause argument fails under plain-error review, we determine that he is foreclosed from bringing his § 2241 petition.

## A

Before addressing Mr. Abernathy's arguments, a brief review of § 2255 and

14

our decision in *Prost* is in order. In 1996, Congress significantly altered the habeas landscape by enacting AEDPA, which limited the availability of filing successive § 2255 petitions to instances involving either (1) clear and convincing new evidence that the prisoner was not guilty of the offense, or (2) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review. *See* 28 U.S.C. § 2255(h); *Prost*, 636 F.3d at 583–84. Particularly relevant to Mr. Abernathy's circumstance is what AEDPA *did not* provide. It did not provide a remedy for second or successive § 2255 motions based on intervening judicial interpretations of statutes, even though such relief had, in some instances, been available under prior law. *See, e.g.*, *Davis*, 417 U.S. at 346–47 (holding that § 2255 is available even on nonconstitutional grounds if a new decision establishes that a prisoner was convicted "for an act that the law does not make criminal"); *United States v. Barnhardt*, 93 F.3d 706, 708–09 (10th Cir. 1996) (holding that the Supreme Court's interpretation of 18 U.S.C. § 924(c)(1) in *Bailey v. United States*, 516 U.S. 137 (1995), has retroactive application to cases on collateral review).

Following AEDPA's enactment, federal prisoners who are barred from bringing second or successive § 2255 motions may still be able to petition for habeas relief under § 2241 through the mechanism of § 2255(e)'s savings clause. "To fall within the ambit of [the] savings clause and so proceed to § 2241, a prisoner must show that 'the remedy by motion [under § 2255] is inadequate or

15

ineffective to test the legality of his detention.'" *Prost*, 636 F.3d at 581 (second alteration in original) (quoting 28 U.S.C. § 2255(e)). Section 2255, however, has been found to be "inadequate or ineffective" only in "extremely limited circumstances." *Caravalho v. Pugh*, 177 F.3d 1177, 1178 (10th Cir. 1999); *see Brace*, 634 F.3d at 1169 (stating that "§ 2255 will rarely be an inadequate or ineffective remedy to challenge a conviction"). In *Prost*, we set forth our test: we ask "whether a petitioner's argument challenging the legality of his detention could have been tested in an initial § 2255 motion. If the answer is yes, then the petitioner may not resort to the savings clause and § 2241." 636 F.3d at 584.

To understand how we settled on such a test in *Prost*, further background regarding the case is helpful. In 1999, the defendant, Mr. Prost, was convicted in the United States District Court for the Eastern District of Missouri of, *inter alia*, conspiracy to launder illegal drug proceeds in violation of 18 U.S.C. § 1956. *See Prost*, 636 F.3d at 580. This particular crime contained an element requiring proof that Mr. Prost laundered illegal "proceeds." *See id.* Following conviction, Mr. Prost did not file a direct appeal, nor did he challenge the "proceeds" element during a later § 2255 motion. *See id.*

In 2008, the Supreme Court decided *United States v. Santos*, 553 U.S. 507 (2008), which held that when the government alleges that the defendant laundered the "proceeds" of an illegal gambling business, the government must prove that the laundering transactions involved the profits of the business, rather than its

16

gross receipts, to establish a violation of § 1956. *See* 553 U.S. at 514 (plurality

opinion); *Prost*, 636 F.3d at 580. In response to *Santos*, Mr. Prost filed a petition

for a writ of habeas corpus under § 2241 to challenge his money-laundering

conviction. *See Prost*, 636 F.3d at 580–81. The district court dismissed the

habeas petition, *see id.* at 582, and we affirmed, *see id.* at 598.

Without addressing whether Mr. Prost's money-laundering conviction was

invalid under *Santos*, we concluded that Mr. Prost could not seek habeas relief

under § 2241 because he failed to show that § 2255 provided an inadequate or

ineffective remedy when he filed his first § 2255 petition.[8] *See id.* at 588; *id.* at

580 ("The fact that § 2255 bars Mr. Prost from bringing his statutory

---

[8] The government contends that we need not "address *Prost* or any of the issues it reserved, including whether [*Prost*'s] narrow interpretation of Section 2255(e) raises serious constitutional questions that justify a broader interpretation of the statute to avoid those questions," because Mr. Abernathy first must make a threshold showing that, under *Chambers*, he is actually innocent. Aplee. Supp. Br. at 3; *see also id.* at 4 (urging us to affirm the dismissal of Mr. Abernathy's § 2241 petition "on the narrow alternative ground that he is not 'actually innocent' of his enhanced sentence."). More specifically, the government contends that *Prost* was decided "on the necessary (but not sufficient) assumption that [Mr.] Prost was actually innocent." Aplee. Supp. Reply Br. at 7. We disagree with the government's reading of *Prost*. In *Prost*, we did not reach the merits of Mr. Prost's actual innocence claim or assume without deciding that he had made a sufficient showing of actual innocence. *See* 636 F.3d at 580–88; *cf. Brace*, 634 F.3d at 1170 n.3 (after rejecting the petitioner's argument that he could proceed with his *Santos* claim under § 2241, discussing in dicta that "[e]ven if [the petitioner] could raise a *Santos* argument" he would not prevail under it). Just as we did not need to reach the *Santos* claim in *Prost* or *Brace*, we need not reach the merits of Mr. Abernathy's *Chambers* actual innocence claim because we conclude that he cannot proceed under § 2241 at all. We have no occasion to decide whether or under what circumstances, if any, such a showing may be necessary; rather, we can affirm the district court's decision in the instant case by closely adhering to the decisional framework applied in *Prost* and *Brace*.

17

interpretation argument *now*, in a *second* § 2255 motion almost a decade after his conviction, doesn't mean the § 2255 remedial process was ineffective or inadequate to test his argument.").

Notably, in our analysis, we expressly rejected a theory that Mr. Prost advanced for why § 2255 did not provide an adequate and effective means of testing his "proceeds" argument based upon the existence of adverse circuit precedent. Under the so-called "erroneous circuit foreclosure test," Mr. Prost argued that he should have been excused from not raising an argument in his initial § 2255 motion in the Eastern District of Missouri if binding circuit court precedent—that is, Eighth Circuit precedent—had previously rejected his argument. *See id.* at 590–93. In setting our face against this test, we held that § 2255 was adequate and effective because Mr. Prost *could* have made his "proceeds" argument to the Eighth Circuit, even if this argument had been foreclosed by then-controlling Eighth Circuit precedent. *See id.* at 590. Regardless of the likelihood of success on such an argument, we reasoned, "[t]he savings clause doesn't guarantee results, only process." *Id.*

We now turn to Mr. Abernathy's arguments regarding why he should be permitted to proceed under § 2241.

**B**

Mr. Abernathy's position is, in many ways, very similar to that of Mr. Prost. Like Mr. Prost, Mr. Abernathy was convicted of an offense and sentenced

18

under then-controlling circuit precedent.  Furthermore, like Mr. Prost, he did not raise in his initial § 2255 motion the issue that he now seeks to pursue under § 2241.  And, analogous to Mr. Prost's circumstances, following the initial § 2255 motion, the Supreme Court issued a decision—in Mr. Abernathy's case, *Chambers*—that arguably invalidated some aspect of his sentence.[9]

Given the sweeping language in *Prost*, 636 F.3d at 589 ("The simple fact is that Congress decided that, unless subsection (h)'s requirements are met [i.e., newly discovered evidence or a new rule of constitutional law that the Supreme Court made retroactive on collateral review], finality concerns trump and the litigation must stop after a first collateral attack.  Neither is this court free to reopen and replace Congress's judgment with our own."), and the factual similarities between *Prost* and the case here, Mr. Abernathy's claims appear to be barred, *see Stine v. Davis*, 442 F. App'x 405, 405–06 (10th Cir. 2011) ("A *Chambers*-type argument that his prior escape convictions did not merit a career offender enhancement was available to Mr. Stine at the time of his initial § 2255 motion.  The fact that *Chambers* itself was not decided until after Mr. Stine filed his initial § 2255 motion makes no difference.  Neither does the fact that Mr. Stine may have tried and lost a *Chambers*-type argument in his first § 2255

---

[9]  The issue in *Prost* was slightly different than what we have here because Mr. Prost argued that he was "actually innocent" of his *underlying conviction* due to the Supreme Court's decision in *Santos*, whereas Mr. Abernathy claims that he is actually innocent of his *sentencing enhancement* under the ACCA as a result of the Supreme Court's decision in *Chambers*.

motion mean that it was an inadequate and ineffective remedial vehicle for challenging his detention."); *see also Brace*, 634 F.3d at 1170 (holding that the defendant is precluded from bringing his *Santos*-based statutory interpretation argument under *Prost*). However, Mr. Abernathy presents two arguments for why he should be able to proceed under § 2241; in *Prost*, we did not explicitly address one of them and we specifically declined to reach the other one. We address them in turn below and conclude that neither argument is ultimately persuasive.

**1**

It is Mr. Abernathy's burden to show that he meets § 2255(e)'s savings clause. *See Prost*, 636 F.3d at 584. To do so, he must demonstrate that § 2255's remedy is "inadequate or ineffective" by showing that the legality of his detention could not have been tested in his initial § 2255 motion. *See id.* Mr. Abernathy maintains that he can carry this burden because he could not have tested his argument that his 1979 escape conviction does not qualify as an ACCA predicate offense in his initial § 2255 motion. This is so, he says, because the law-of-the-case doctrine precluded him from raising a claim in his initial § 2255 motion that he already had raised unsuccessfully on direct appeal. Therefore, reasons Mr. Abernathy, his argument *could not* have been tested in his initial § 2255 motion.

We disagree. Mr. Abernathy is correct that, under the law-of-the-case doctrine, courts ordinarily would refuse to reconsider arguments presented in a

20

§ 2255 motion that were raised and adjudicated on direct appeal.[10] *See Davis*, 417

U.S. at 342 (noting that the law-of-the-case doctrine typically precludes

consideration of issues in a § 2255 proceeding that were previously decided on

direct appeal); *United States v. Irving*, 665 F.3d 1184, 1192–93 (10th Cir. 2011)

(declining to reconsider an argument raised in a § 2255 motion that was addressed

on direct appeal); *United States v. LaHue*, 261 F.3d 993, 1010–11 (10th Cir.

2001) ("The law of the case doctrine posits that when a court decides upon a rule

of law, that decision should continue to govern the same issues in subsequent

stages in the same case." (quoting *United States v. Alvarez*, 142 F.3d 1243, 1247

(10th Cir. 1998)) (internal quotation marks omitted)); *see also United States v.*

*Davis*, 406 F.3d 505, 511 (8th Cir. 2005) (declining to reconsider an argument

raised in a § 2255 motion that was addressed on direct appeal); *Dall v. United*

*States*, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam) ("[C]laims which were

raised and decided on direct appeal cannot be relitigated on a motion to vacate

pursuant to 28 U.S.C. § 2255." (alteration in original) (quoting *United States v.*

*Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981) (per curiam)) (internal quotation

marks omitted)).

---

[10]     In making this argument, Mr. Abernathy relies on both the Eighth Circuit's
law-of-the-case jurisprudence and our own.  We need not decide the relevance, if any, of
the Eighth Circuit's law in this context because we hold that the general principle
animating the law-of-the-case doctrine—that a decision of law in a given case governs the
same issues in all stages of the litigation—will not allow a petitioner to meet our savings
clause test.  In any event, the Eighth Circuit's version of the doctrine appears to be
materially identical to ours, as it relates to Mr. Abernathy's argument.

However, we reject Mr. Abernathy's law-of-the-case argument for very similar reasons to those we found persuasive in rebuffing the erroneous circuit foreclosure test in *Prost*. The petitioner suggested in *Prost* that we should excuse his failure to pursue an argument in an initial § 2255 motion if that argument was erroneously foreclosed by binding circuit precedent. *See* 636 F.3d at 590. We declined to excuse such a failure, reasoning that "the savings clause doesn't guarantee results, only process." *Id.*; *see also id.* at 589 ("[I]t is the infirmity of the § 2255 remedy itself, not the failure to use it or prevail under it, that is determinative."). In that vein, "the plain language of the savings clause does not authorize resort to § 2241 simply because a court errs in rejecting a good argument," even if "the court's error on the merits happens to be induced by preexisting circuit precedent." *Id.* at 590; *see id.* ("Critically, Mr. Prost doesn't—and can't—dispute that he *was* entirely free to raise and test a *Santos*-type argument in his initial § 2255 motion. Instead, he argues only that a *Santos*-type argument likely would have been rejected on the merits at the district court and circuit panel levels because of adverse circuit precedent.").

Thus, in *Prost*, it made no difference whether an argument made in an initial § 2255 motion would have been rejected due to a "newly crafted but deficient test, or by application of an old but equally bad test found in circuit precedent." *Id.* Similarly, we see no reason why it should matter here that courts likely would have rejected Mr. Abernathy's *Chambers* argument in his § 2255

22

proceeding under the law-of-the-case doctrine.[11]

In other words, just as a prisoner whose argument ordinarily would be foreclosed by adverse circuit precedent cannot show that § 2255's remedy is inadequate or ineffective because nonetheless his argument "could have been tested in an initial § 2255 motion," *see id.* at 584, 590–93, a prisoner (like Mr. Abernathy) whose argument ordinarily would be barred by the law-of-the-case doctrine also cannot make such an inadequate-or-ineffective showing because his argument too *could have been tested* in his initial § 2255 motion, *cf. id.* at 592

---

[11] Indeed, the law-of-the-case doctrine and binding circuit precedent function similarly from the perspective of a court addressing an initial § 2255 motion; typically, in both circumstances, the court is bound by a previous court's decision unless there has been an intervening change in the law. *See Irving*, 665 F.3d at 1192 n.12 (noting that one exception to the law-of-the-case doctrine is "when controlling authority has subsequently made a contrary decision of the law applicable to such issues"). Actually, there would be even more reason for prisoners like Mr. Abernathy to pursue their arguments in § 2255 proceedings than prisoners like Mr. Prost because courts at least have some modicum of discretion as to whether to apply the law-of-the-case doctrine to bar reexamination of arguments, *see id.* at 1192 & n.12 (setting forth three exceptions to the law-of-the-case doctrine and noting that it "is not a limit on our power . . . nor an inexorable command" (citations omitted) (internal quotation marks omitted)); *LaHue*, 261 F.3d at 1010 (describing the law-of-the-case doctrine as a "'rule of practice' and not a limit on the court's power" (quoting *Alvarez*, 142 F.3d at 1247)); *see also United States v. Serpa*, 930 F.2d 639, 640 (8th Cir. 1991) (per curiam) ("Although the law-of-the-case doctrine does not preclude us from reconsidering and correcting an erroneous decision, we will do so only to prevent a manifest injustice."), whereas no such discretion seemingly exists when a court is faced with binding circuit precedent, *see United States v. DeVaughn*, 694 F.3d 1141, 1149 n.4 (10th Cir. 2012) ("We cannot, of course, 'overturn the decision of another panel of this court barring en banc reconsideration, a superseding contrary Supreme Court decision, or authorization of all currently active judges on the court.'" (quoting *United States v. Edward J.*, 224 F.3d 1216, 1220 (10th Cir. 2000))).

23

n.11 ("[T]he difficulty of prevailing on a particular argument does not excuse the failure to make it in the first place.").  And furthermore, as when confronting adverse circuit precedent, a prisoner whose argument is rejected on direct appeal and then subject to the law-of-the-case doctrine in a subsequent § 2255 proceeding, may still pursue his argument through the appellate court with the hope that at the very least the Supreme Court will grant a petition for certiorari and vindicate his cause.  *See id.* at 590–91 ("The U.S. Reports are, after all, replete with instances where the Supreme Court has rewarded litigants who took the trouble to challenge adverse circuit precedent.  While there is of course no guarantee that any *en banc* or *certiorari* petition will be granted, Mr. Prost can't dispute that § 2255, as a procedural vehicle, was (and has proven to be) an *adequate and effective* means for *testing* the question he now seeks to pose.").

In short, Mr. Abernathy misconstrues the savings clause test that we adopted in *Prost*.  His challenge to his 1979 escape conviction "could have been tested in an initial § 2255 motion," *id.* at 584, regardless of whether his claim would have been barred by the law-of-the-case doctrine.  *Cf. United States v. Dority*, No. 12-7064, 2013 WL 238854, at *1 (10th Cir. Jan. 23, 2013) ("[The § 2255(e) savings clause] exception has no application here: no one disputes [the petitioner] could have brought and tested a *Chambers*-type challenge to his sentence in his initial § 2255 motion.  Indeed, it's clear he was fully aware of the argument: he avidly pursued it at sentencing before the district court yet simply

failed to pursue it in his initial § 2255 motion."). Accordingly, we hold that a prisoner, like Mr. Abernathy, cannot demonstrate that § 2255's remedy is "inadequate or ineffective" to test the legality of his detention merely because the law-of-the-case doctrine may have barred reconsideration of his claim.

**2**

We turn next to Mr. Abernathy's argument that denying him the opportunity to seek relief under § 2241 would effectively suspend his right to seek a writ of habeas corpus in violation of the Constitution's Suspension Clause.

**a**

Mr. Abernathy contends that it would violate the Suspension Clause to foreclose § 2241 as a potential avenue for relief. However, Mr. Abernathy failed to raise this argument before the district court—thus, forfeiting it, *see Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127–28 (10th Cir. 2011)—and does not request on appeal that we review it for plain error. Thus, we could permissibly decline to consider the argument altogether. *See id.* at 1131 ("[T]he failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.").

Yet, the decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary. *See United States v. McGehee*, 672 F.3d 860, 873 n.5 (10th Cir. 2012) ("[W]e are not obliged to apply forfeiture principles to [a party's] briefing omission; such decisions are

25

discretionary."); *cf. Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). In the instant case, certain factors militate in favor of considering Mr. Abernathy's Suspension Clause argument, but only under the demanding plain-error standard.

We elect to consider Mr. Abernathy's Suspension Clause argument, at least in part, because the government neglected to raise his failure to preserve the argument in its briefing. Such an instance of neglect could function as a forfeiture of the opportunity to hold Mr. Abernathy to his failure to preserve his argument. *See McGehee*, 672 F.3d at 873 n.5 ("[A] colorable argument could be advanced that we should overlook [the appellant's] apparent failure to preserve his acceptance-of-responsibility argument because the government forfeited the right to object to it" by "not argu[ing] that [the appellant] failed to preserve this argument."); *cf. United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) ("Defendant concedes he did not challenge the validity of his plea before the district court. The Government, however, does not argue Defendant waived his present challenge, and accordingly, has waived the waiver.").

However, we are nevertheless reluctant to definitively opine on the merits of Mr. Abernathy's Suspension Clause argument under de novo review, because the government has devoted very little time to addressing it, and, thus, we are

26

deprived of the benefit of vigorous adversarial testing of the issue, not to mention a reasoned district court decision on the subject. *Cf. Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) ("Our system of justice, after all, is not a self-directed inquisitorial one; to avoid error, we are dependent on the full development of issues through the adversarial process . . . ."). Our reluctance is heightened because Mr. Abernathy's argument involves a complicated and little-explored area of constitutional law. *Cf. United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) ("Given the apparent complexity of th[e] issue . . . we are reluctant to definitively opine on its merits without a full adversarial framing of the relevant considerations."); *Prost*, 636 F.3d at 594 (declining to reach whether denying a petitioner access to § 2241 creates a "serious constitutional question" when it had not been adequately briefed "given that significant and largely uncharted questions of the Constitution's meaning, questions whose proper outcome is far from certain, hang in the balance").

In sum, we are inclined to consider Mr. Abernathy's Suspension Clause argument, even though we are not obliged to do so. *See Richison*, 634 F.3d at 1131. However, because of the aforementioned considerations, we inquire only whether it was plain error for the district court to foreclose Mr. Abernathy from seeking relief under § 2241. We turn now to that inquiry.[12]

---

[12]    Mr. Abernathy contends that the government conceded the Suspension Clause issue. We, however, agree with the government that this is not the case. While it

(continued...)

27

**b**

To succeed under plain-error review, Mr. Abernathy must demonstrate: "(1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *DeChristopher*, 695 F.3d at 1091. "An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *Id.* (quoting *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011)) (internal quotation marks omitted). We need not decide whether there was error—*viz.*, whether the district court's dismissal of Mr. Abernathy's § 2241 petition had the effect of violating the Suspension Clause—because even assuming *arguendo* that there was error, it would not be plain (i.e., clear or obvious).

The Suspension Clause states that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the

---

[12](...continued)
is true that the government stated that the denial of habeas relief to a person who is actually innocent "might run afoul of the Suspension Clause," Aplee Br. at 15 n.3, it has never taken the position that the Suspension Clause actually would be violated here, *see* Aplee. Supp. Reply Br. at 14–15. To be sure, to the extent that the government has taken a position on the Suspension Clause issue, it has been, at best, an equivocal one. Nevertheless, the government has made clear that it does not concede the issue. And, ultimately, Mr. Abernathy bears the burden of establishing that the district court's ruling amounts to plain error. *See United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (holding that it is the burden of the party who failed to preserve his argument to demonstrate plain error).

public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In assessing whether any Suspension Clause error here is plain, at the outset, we observe that neither the Supreme Court nor our court has ever addressed the specific issue before us. That is, neither court has assayed whether an interpretation of § 2255's savings clause (such as we adopted in *Prost*) that precludes petitioners, like Mr. Abernathy, from proceeding under § 2241, even though their claims (we assume) would have been barred in their initial § 2255 proceedings by the law-of-the-case doctrine, raises serious questions under the Suspension Clause, much less would effect a violation of it. Therefore, on this basis alone, Mr. Abernathy has a very tough row to hoe (if not an impossible task) to establish that any error by the district court on the Suspension Clause issue was clear or obvious.[13]

Indeed, there does not appear to be much that is clear or obvious in the Suspension Clause area. *See* Amanda L. Tyler, *The Forgotten Core Meaning of the Suspension Clause*, 125 Harv. L. Rev. 901, 903 (2012) ("The Suspension Clause remains a puzzle."); *cf. INS v. St. Cyr*, 533 U.S. 289, 301 n.13 (2001) (describing "what the Suspension Clause protects" as a "difficult question"). As an initial matter, neither the Supreme Court, nor our court, has decided whether the Suspension Clause only prohibits suspension of the writ as it existed at the

---

[13] Indeed, a panel of our court has previously rejected a similar Suspension Clause challenge. *See In re Alvarado*, No. 10-4205 (10th Cir. Order, filed Dec. 2, 2010) (rejecting petitioner's Suspension Clause challenge to § 2255(h)'s restriction on the filing of second or successive habeas petitions despite his assertion that he was actually innocent of one of the predicate offenses that triggered a career-offender life sentence).

29

time the Constitution was drafted, or whether it also protects against suspension of the writ as it exists today. *See Boumediene v. Bush*, 553 U.S. 723, 746 (2008) ("The Court has been careful not to foreclose the possibility that the protections of the Suspension Clause have expanded along with post-1789 developments that define the present scope of the writ."); *id.* ("[T]he Court has said that 'at the absolute minimum' the Clause protects the writ as it existed when the Constitution was drafted and ratified." (quoting *St. Cyr*, 533 U.S. at 301)); *see also Felker v. Turpin*, 518 U.S. 651, 663–64 (1996) ("[W]e assume, for purposes of decision here, that the Suspension Clause . . . refers to the writ as it exists today, rather than as it existed in 1789.").

Over the years, some members of the Supreme Court have explicitly adopted the former view (that is, it only protects against suspension of the writ as it existed at the time the Constitution was drafted). *See Boumediene*, 553 U.S. at 832 (Scalia, J., dissenting) ("The writ as preserved in the Constitution could not possibly extend farther than the common law provided when th[e Suspension] Clause was written."); *Swain v. Pressley*, 430 U.S. 372, 384 (1977) (Burger, C.J., concurring) ("The sweep of the Suspension Clause must be measured by reference to the intention of the Framers and their understanding of what the writ of habeas corpus meant at the time the Constitution was drafted."); *cf. Morales v. Bezy*, 499 F.3d 668, 670 (7th Cir. 2007) ("Over the years, Congress has authorized a much broader use of habeas corpus; but curtailing an optional statutory enlargement

30

does not violate the suspension clause. That would create an irrational ratchet. Habeas corpus could always be enlarged, but once enlarged could not be returned to its previous, less generous scope without a constitutional amendment. Once this was understood, there would be few if any further enlargements." (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1038 (7th Cir. 1998)) (internal quotation marks omitted)). Were this the governing view, it is a near certainty that denying Mr. Abernathy access to § 2241 would not raise serious Suspension Clause concerns, as the writ as it existed in 1789 was available only in very limited circumstances that are not implicated here. *See, e.g.*, *Swain*, 430 U.S. at 385 (Burger, C.J., concurring) ("Thus, at common law, the writ was available (1) to compel adherence to prescribed procedures in advance of trial; (2) to inquire into the cause of commitment not pursuant to judicial process; and (3) to inquire whether a committing court had proper jurisdiction. The writ in 1789 was not considered a means by which one court of general jurisdiction exercises post-conviction review over the judgment of another court of like authority." (citations omitted) (internal quotation marks omitted)); Dallin H. Oaks, *Legal History in the High Court—Habeas Corpus*, 64 Mich. L. Rev. 451, 451 (1966) ("[C]ourts have moved away from using the writ of habeas corpus for its historic functions of eliciting the cause of commitment and compelling adherence to prescribed procedures in advance of trial until today it has become primarily a means by which one court of general jurisdiction exercises post-conviction review over the judgment of

31

another court of like authority." (footnote omitted)); *id.* at 468 (noting that under "[t]he seventeenth and eighteenth century law of habeas corpus . . . . once a person had been convicted by a superior court of general jurisdiction, a court disposing of a habeas corpus petition could not go behind the conviction for any purpose other than to verify the formal jurisdiction of the committing court."); *see also* Tyler, *supra*, at 921 ("By the time of the Founding, the privilege had evolved to encompass not just a generic right to due process, but also a particular demand (derived in large measure from the English Habeas Corpus Act of 1679) that persons within protection detained for criminal or national security purposes be charged criminally and tried in due course or discharged.").

Nevertheless, even if it were settled that the Suspension Clause protects the writ as it exists today, it is still unclear whether precluding Mr. Abernathy from proceeding under § 2241 would implicate the Suspension Clause. It is well-established that the Suspension Clause does not prohibit the "substitution of a collateral remedy which is *neither inadequate nor ineffective* to test the legality of a person's detention." *Swain*, 430 U.S. at 381 (emphasis added); *cf. Miller v. Marr*, 141 F.3d 976, 977 (10th Cir. 1998) ("Whether [AEDPA's] one-year limitation period violates the Suspension Clause depends upon whether the limitation period renders the habeas remedy 'inadequate or ineffective' to test the legality of detention." (quoting *Swain*, 430 U.S. at 381)). And at least as a matter of statutory interpretation—i.e., interpreting the "ineffective or inadequate"

32

language in § 2255(e)—we have held that § 2255's remedy is neither inadequate nor ineffective to test the legality of Mr. Abernathy's detention. *See Prost*, 636 F.3d at 580 (holding that the petitioner's "initial § 2255 motion offered him an adequate and effective means for testing [his statutory interpretation] argument"). Thus, for purposes of the Suspension Clause, it would hardly seem clear or obvious that § 2255 would not be an adequate and effective substitute for the writ.

As Mr. Abernathy points out, the Supreme Court has held that a statutory remedy may serve as an adequate substitute for the habeas writ, only so long as it sufficiently "entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene*, 553 U.S. at 779 (quoting *St. Cyr*, 533 U.S. at 302). But how far (if at all) this statement extends into the AEDPA context—as opposed to the executive detention context of *Boumediene*—is far from clear.[14]

---

[14]     The Supreme Court in *Boumediene* emphasized the difference between the executive detention context and that typical of a state or federal prisoner challenging his confinement. When a state prisoner is seeking habeas relief from a state court judgment, "a court of record provides defendants with a fair, adversary proceeding," and a federal prisoner too "already has had a chance to seek review of his conviction in a federal forum through a direct appeal." *Boumediene*, 553 U.S. at 782. "In th[e executive detention] context the need for habeas corpus is more urgent" than in the context of "[a] criminal conviction in the usual course [that] occurs after a judicial hearing before a tribunal disinterested in the outcome and committed to procedures designed to ensure its own independence." *Id.* at 783. Detention by executive order "fall[s] outside these categories." *Id.* at 782. And "[w]here a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most

(continued...)

33

Furthermore, even if this proposition of *Boumediene* were controlling in the AEDPA context, unlike individuals subject to certain forms of executive detention, Mr. Abernathy seemingly would have already had the meaningful opportunity to contest the legality of his confinement—which the Supreme Court contemplated in *Boumediene*—in his initial § 2255 proceeding.

Finally, our conclusion that any error was not plain (i.e., clear or obvious) is bolstered by the fact that even the circuit courts that have held, in certain circumstances, that § 2255's bar on second or successive motions raises serious constitutional concerns, have declined to do so on Suspension Clause grounds, thus offering virtually no guidance on the issue before us. For example, in *Triestman*, the habeas petitioner argued that it would violate the Suspension Clause and the Fifth Amendment's Due Process Clause if § 2255 were interpreted to foreclose judicial review of his claim that he is actually innocent of the crime for which he stood convicted. *See* 124 F.3d at 378. The Second Circuit agreed that such foreclosure would create "serious constitutional questions," but concluded that the constitutional concerns emanated from the Eighth Amendment and the Due Process Clause; it specifically declined to determine "whether th[e]

---

[14](...continued)
pressing." *Id.* at 783; *see also St. Cyr*, 533 U.S. at 301 ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest.").

case present[ed] a significant Suspension Clause question."[15]  *Id.* at 377–79.

The Third Circuit in *In re Dorsainvil* was faced with a similar situation to the one presented here, as the habeas petitioner maintained that denying him the ability to pursue his actual innocence claim under § 2241 based upon the Supreme Court's retroactive interpretation of the statute under which he was convicted would violate the Suspension Clause and the Fifth Amendment's Due Process Clause.  *See* 119 F.3d at 248.  The court concluded that if "no other avenue of judicial review [is] available for a party who claims that s/he is factually or legally innocent as a result of a previously unavailable statutory interpretation, we would be faced with a thorny constitutional issue."  *Id.*  The court avoided the "thorny constitutional issue" by interpreting the savings clause to permit the petitioner to proceed under § 2241.  *See id.*  It is not at all clear that the Third Circuit was even referring to the Suspension Clause when it spoke of a "thorny constitutional issue"; but even if it was, it clearly did not base its decision on that clause.  *See id.* at 250 (relying in significant part on the Supreme Court's decision in *Davis*, where the Court held that it would constitute a "complete miscarriage of

---

[15]  Our focus is the Suspension Clause because that is the only constitutional provision invoked by Mr. Abernathy.  We express no view on whether any other constitutional provision—the Eighth Amendment, the Fifth Amendment's Due Process Clause, or any other provision—would compel a different result than the one that we reach here.  Furthermore, to reiterate, we also do not opine on whether the circumstances of this case would present serious concerns under the Suspension Clause were we reviewing the matter de novo; we simply hold that under plain-error review Mr. Abernathy has not demonstrated reversible error based upon the Suspension Clause.

35

justice" if an individual were convicted and punished "for an act that the law does not make criminal" (quoting *Davis*, 417 U.S. at 346) (internal quotation marks omitted)).

Thus, even those courts that have held there are serious constitutional concerns when habeas petitioners with claims similar to Mr. Abernathy's are precluded from seeking relief under § 2241 have declined to rest their conclusions on Suspension Clause grounds. Therefore, they shed virtually no light on whether the Suspension Clause would be violated by denying Mr. Abernathy access to § 2241. Thus, not only is it far from well-settled under the law of the Supreme Court and the Tenth Circuit that Mr. Abernathy's Suspension Clause argument has force, but there is virtually no support for Mr. Abernathy's position in other circuits as well.

In conclusion, as we recognized in *Prost*, there may be situations where § 2255(e)'s savings clause may need to be interpreted to avoid "serious constitutional questions."[16] 636 F.3d at 594. We reach no definitive conclusions, under a de novo standard of review, regarding whether such serious questions could ever arise under the Suspension Clause. Instead, we simply hold under the

---

[16] When it is appropriate, courts employ the "avoidance canon," which provides that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1249 (10th Cir. 2008) (quoting *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)) (internal quotation marks omitted).

circumstances of this case that it is not clear or obvious under well-settled law that denying Mr. Abernathy access to a § 2241 habeas remedy through the savings clause of § 2255(e) would raise serious questions under the Suspension Clause, much less have the effect of violating that provision. Thus, Mr. Abernathy's Suspension Clause claim fails under plain-error review.

## C

Before concluding, we note that, although the district court did not expressly state that it was dismissing Mr. Abernathy's petition for lack of jurisdiction, when a federal petitioner fails to establish that he has satisfied § 2255(e)'s savings clause test—thus, precluding him from proceeding under § 2241—the court lacks statutory jurisdiction to hear his habeas claims.[17] *See* 28

---

[17] We note that, to the extent that the government urges us to dismiss Mr. Abernathy's § 2241 petition on the ground that his *Chambers* claim lacks merit—that is, to decide the merits of Mr. Abernathy's petition before deciding the threshold jurisdictional issue of whether Mr. Abernathy can proceed at all under § 2241—this would require us to exercise hypothetical statutory jurisdiction. In other words, we would need to assume *arguendo* that statutory jurisdiction was present in order to reach the merits of Mr. Abernathy's § 2241 petition. Because we resolve this appeal on jurisdictional grounds, we have no need to definitively opine on whether the hypothetical-jurisdiction approach contemplated by the government's argument would be even viable. There is some suggestion in the case law that, with respect to statutory jurisdiction, as opposed to constitutional Article III jurisdiction, it would be. *See Yancey v. Thomas*, 441 F. App'x 552, 555 n.1 (10th Cir. 2011) (noting that the Supreme Court in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), rejected "the so-called doctrine of 'hypothetical jurisdiction,'" but in so doing, "repeatedly spoke in terms of Article III jurisdiction, rather than jurisdiction in general"); *cf. Marquez-Almanzar v. INS*, 418 F.3d 210, 216 n.7 (2d Cir. 2005) ("The jurisdictional prerequisites to our consideration of the merits in this case are imposed by statute, not the Constitution, and thus are not a bar to our assumption of 'hypothetical jurisdiction' . . . ."); *Bowers v. Nat'l Collegiate Athletic*

(continued...)

37

U.S.C. § 2255(e) ("An application for a writ of habeas corpus . . . *shall not be entertained* . . . unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." (emphasis added)); *Brace*, 634 F.3d at 1169–70 (affirming the district court's dismissal for lack of jurisdiction of a petitioner's § 2241 petition, where the petitioner could not meet § 2255(e)'s savings clause); *see also Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (concluding that the district court lacked jurisdiction over the petitioner's § 2241 petition because he failed to meet the Fourth Circuit's savings clause test); *Harrison v. Ollison*, 519 F.3d 952, 961–62 (9th Cir. 2008) (affirming the district court's dismissal of a § 2241 petition for lack of jurisdiction because the petitioner failed to meet the Ninth Circuit's savings clause test); *cf. Palma-Salazar v. Davis*, 677 F.3d 1031, 1038 (10th Cir. 2012) (holding that a § 2241 petitioner's claim was not cognizable under § 2241 and therefore the district court lacked jurisdiction).

Therefore, we construe the district court's dismissal of Mr. Abernathy's petition as resting on a lack of statutory jurisdiction. And, as such, it was a

---

[17](...continued)
*Ass'n*, 346 F.3d 402, 415–16 (3d Cir. 2003) ("*Steel Co.* . . . should not be understood as requiring courts to answer all questions of 'jurisdiction,' broadly understood . . . . Instead, that case requires courts to answer questions concerning Article III jurisdiction before reaching other questions."); *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.,* 325 F.3d 54, 59–60 (1st Cir. 2003) (noting that "statutory jurisdictional disputes are not" subject to *Steel Co.* and collecting cases). However, as noted, we need not resolve this matter here; it is a question for another day.

dismissal *without* prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice."); *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal of [plaintiff's] claim must be without prejudice."); *cf. Costello v. United States*, 365 U.S. 265, 284–55 (1961) (construing a district court's dismissal as being for lack of jurisdiction and thus without prejudice, even though the court was silent regarding whether its dismissal was with or without prejudice).

## III

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Mr. Abernathy's 28 U.S.C. § 2241 petition for a writ of habeas corpus for a lack of jurisdiction. We **DENY** both parties' motions to supplement the record as moot, and **GRANT** Mr. Abernathy's motion to strike the government's errata sheet.